**UNITED STATES of America, Plaintiff,**

v.

**PENNSYLVANIA ENVIRONMENTAL HEARING BOARD et al., Defendants.**

Civ. No. 73-454.

United States District Court, M. D. Pennsylvania.

June 13, 1974.

James W. Walker, Asst. U. S. Atty., Scranton, Pa., James R. Walpole, Atty., U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Gerald C. Grimud, Barbara H. Brandon, Asst. Attys. Gen., Commonwealth of Pennsylvania, Lawrence Silver, Deputy Atty. Gen., Commonwealth of Pennsylvania, Harrisburg, Pa., for defendants.

SHERIDAN, Chief Judge.

The United States of America brings this action requesting that "1. A judgment be entered declaring that: (a) Section 605 of the Pennsylvania Clean Stream Law, 35 P.S. 691.605, is neither applicable to nor enforceable against the United States or its officers or agents; (b) the civil penalties totaling $1,667,000.00 imposed by order of the Pennsylvania Enyironmental Hearing Board against the officers and agents of the United States, are invalid, and (c) the penalties entered as liens upon the Judgment Records of the Prothonotary of Lackawanna County, Pennsylvania, are null and void. 2. The defendants, their successors, agents, attorneys and employees be permanently enjoined from enforcing and collecting the said penalties as liens or instituting any proceedings to enforce the provisions of the Pennsylvania Clean Streams Law, 35 P.

S. 691.605, against the plaintiff herein; . . . ." Jurisdiction is invoked under Sections 1345, 2201 and 2202 of Title 28 of the United States Code.

Defendants have moved to dismiss the action on the grounds: (1) the court is without jurisdiction and the government lacks standing to sue; (2) the action is barred by the federal anti-injunction statute; (3) the doctrine of res judicata bars the court from granting relief; (4) the government waived its right to maintain this action since it did not remove the state proceeding pursuant to 28 U.S.C. § 1442 and § 1442a; (5) on principles of comity, the court should abstain; and (6) failure to exhaust administrative remedies and failure to state a claim upon which relief can be granted.

On September 5, 1972, the Pennsylvania Department of Environmental Resources filed a complaint for civil penalties before the Pennsylvania Environmental Hearing Board (Board) against the Chamberlain Manufacturing Corporation, the operator of the United States Army Ammunition plant in Scranton, Pennsylvania; Daniel E. Duggan, Commanding Officer of that facility for the United States Army; and Robert Froehlke, Secretary of the Army. The complaint alleged violations of the Pennsylvania Clean Streams Law, Act of June 1937, P.L.1989, as amended, 35 P. S. § 691.1 et seq., and regulations promulgated thereunder. No answer was filed, and on October 19, 1972, a default judgment was issued against Chamberlain, Duggan and Froehlke. On December 18, 1972, a hearing was held for the purpose of fixing the civil penalties to be assessed. An Assistant United States Attorney appeared on behalf of Chamberlain, Duggan and Froehlke for the limited purpose of objecting to the jurisdiction of the Board on the ground that the action was against agents of the United States and barred by the doctrine of sovereign immunity. No evidence was presented by Chamberlain, Duggan or Froehlke. The Assistant United States Attorney did submit a

written position on the jurisdictional question.

The Board issued an "adjudication" and assessed civil penalties of $1,667,-000.00 against Chamberlain and Duggan. As to Froehlke, the complaint was dismissed for lack of jurisdiction over his person. The Board rejected the sovereign immunity claim and found that the complaint was filed against private individuals who were not acting within the scope of their governmental authority, and that the action was not against the United States. Chamberlain and Duggan filed an appeal to the Pennsylvania Commonwealth Court allegedly to protect their rights in the event of an adverse determination here. Subsequently, the appeal was stayed by the Commonwealth Court pending the disposition of various motions in this action, or until its further order.

The United States of America filed this action in its own right. The government initially moved for a preliminary injunction to prevent collection of the penalties imposed. The motion was withdrawn upon a stipulation that the liens would not be enforced pending the final disposition of this action.

Because of the procedural handling of the entire matter and the conflicting federal and state interests, serious and difficult problems of federal-state relations are presented. The main issues center around the interplay of the United States, as plaintiff, seeking declaratory and injunctive relief in a federal court to protect its interests during the pendency of a state proceeding involving the same issues with alleged agents of the government as defendants in the state action.

## JURISDICTION AND STANDING

■■■ The court has jurisdiction with the United States as plaintiff pursuant to 28 U.S.C. § 1345. Contrary to the defendants' contentions, Section 1345 does not "simply provide the forum in which any particular action commenced by the United States-may be taken up. . . ." *See* Leiter Minerals, Inc. v.

United States, 1957, 352 U.S. 220, 223, 77 S.Ct. 287, 1 L.Ed.2d 267. There can be no serious dispute that there is an actual controversy here since the government complains that the prior assessment of penalties by the Board "is a violation of the Constitutional immunity of the United States, its instrumentalities or agencies, from the imposition or collection of penalties, by virtue of its sovereign immunity." *See generally* Leiter Minerals, Inc. v. United States, supra; Island Airlines, Inc. v. C.A.B., 9 Cir. 1965, 352 F.2d 735; United States v. Bureau of Revenue of State of New Mexico, 10 Cir. 1961, 291 F.2d 677; United States v. Farmers State Bank, D.S.D., 1966, 249 F.Supp. 579; United States v. Livingston, E.D.S.C.1959, 179 F.Supp. 9, aff'd, 1960, 364 U.S. 281, 80 S.Ct. 1611, 4 L.Ed.2d 719. The United States is a proper party to bring an action to preserve its sovereign right. It begs the question to argue the United States is not a real party in interest because the penalties were assessed against private individuals and not against the United States and therefore that there is no interference with public administration and the judgment will not expend itself on the public treasury, when the United States in its own right contends to the contrary.

## ANTI-INJUNCTION STATUTE

■■ Section 2283 of Title 28, United States Code reads:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments. . . ."

Defendants argue the court lacks jurisdiction as the declaratory relief sought would necessarily be a permanent injunction against a state administrative proceeding. The United States is not a party to the Board proceeding. In Leiter Minerals, Inc. v. United States, supra, in which the United States brought suit to preliminarily enjoin a state court

proceeding, the Court held that under proper circumstances, § 2283 is not applicable to stays sought by the United States.

" . . . There is, however, a persuasive reason why the federal court's power to stay state court proceedings might have been restricted when a private party was seeking the stay but not when the United States was seeking similar relief. The statute is designed to prevent conflict between federal and state courts. This policy is much more compelling when it is the litigation of private parties which threatens to draw the two judicial systems into conflict than when it is the United States which seeks a stay to prevent threatened irreparable injury to a national interest. The frustration of superior federal interests that would ensue from precluding the Federal Government from obtaining a stay of state court proceedings except under the severe restrictions of 28 U.S.C. § 2283, 28 U.S.C.A. § 2283, would be so great that we cannot reasonably impute such a purpose to Congress from the general language of 28 U.S.C. § 2283, 28 U.S.C.A. § 2283, alone.

. . .

" . . .

" . . . Therefore, since the position of the United States is essentially a defensive one, we think that it should be permitted to choose the forum in this case, even though the state litigation has the elements of an action characterized as *quasi in rem*. . . . " 352 U.S., at 225–226 and 228.

Section 2283 is not a bar to the jurisdiction of this court. See also Mitchum v. Foster, 1972, 407 U.S. 225 at 235–236, 92 S.Ct. 2151, 32 L.Ed.2d 705; NLRB v. Nash-Finch Co., 1971, 404 U.S. 138 at 144–146, 92 S.Ct. 373, 30 L.Ed.2d 328.

## RES JUDICATA

■ Defendants contend that Chamberlain and Duggan are bound by the Board's determination that it had subject matter jurisdiction, and that the Board's decision is res judicata and not subject to collateral attack.

The defendants' position as to the United States is unclear. "The Defendants anticipate that the United States will raise the objection that sovereign immunity is a jurisdictional bar and that the applicability of the government's immunity from suit may be raised collaterally. United States v. United States Fidelity and Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940). But the United States is not bound by the judgement [sic] of the Hearing Board whereas Daniel Duggan and Chamberlain are. There can be no doubt that the subject matter jurisdiction of the Hearing Board is res judicata. Furthermore no question as to the government's immunity from suit can arise from the judgement [sic] rendered by the Board in that in no manner were the rights and duties of the United States affected. . . . "[1] Defendants later contend that "The decision of the Environmental Hearing Board is res judicata as to the United States."[2]

The court's concern is not the res judicata effect on Chamberlain and Duggan but rather on the United States as plaintiff here. There is certainly cause for dispute whether the subject matter jurisdiction was actually litigated without reservation so as to preclude Chamberlain and Duggan from collaterally attacking jurisdiction in this court. See Restatement of Judgments, § 10 (1942); England v. Medical Examiners, 1964, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440.

The problem of a res judicata effect on the United States is compounded by the fact an Assistant United States At-

1. Defendants' "Memorandum In Support of Defendants' Motions To Dismiss And To Strike" at 22.

2. Id. at 25, 26.

torney appeared at the hearing on behalf of Chamberlain, Duggan and Froehlke. The government's attorney indicated he appeared on behalf of the named defendants for the limited purpose to object to the jurisdiction of the Board. Reasons were given, and a brief memorandum in support of the objection was submitted. No evidence was presented on this issue.

In Land v. Dollar, 1946, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209, the Dollar Steamship Lines sued members of the Maritime Commission individually for return of certain stock allegedly pledged as collateral for a debt which had been paid. The defendants defended on the ground the suit was against the United States and consequently barred by sovereign immunity. The Court held plaintiff was entitled to maintain the suit to prove the stock never had been the property of the United States and was being wrongfully withheld by the individual defendants who acted in excess of their authority as public officers and were answerable personally for their actions. However, under the authority of United States v. Lee, 1882, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171, the Court reiterated several times that any judgment would not be res judicata as to the United States, Land v. Dollar, supra, at 736, 737, 739.

United States v. United States Fidelity Co., 1940, 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894, involved a situation in which the United States had filed a claim in a prior proceeding for the Indian Nations for royalties due under leases. Subsequently, the United States brought suit in which a counterclaim was brought against it. The Court held:

> "But, it is said, that there was a waiver of immunity by a failure to object to the jurisdiction of the Missouri District Court over the crossclaim. It is a corollary to immunity from suit on the part of the United States and the Indian Nations in tutelage that this immunity cannot be waived by officials. If the contrary were true, it would subject the Gov-

ernment to suit in any court in the discretion of its responsible officers. This is not permissible." (Footnotes omitted.) 309 U.S. 506, at 513, 60 S. Ct. 653, at 657, 84 L.Ed. 894.

See 1B Moore's Federal Practice § 0.-405[4.–1] at 650–652.

The fact that an Assistant United States Attorney appeared on behalf of the defendants for the limited purpose to object to jurisdiction does not change the result.

United States v. United States District Court, 9 Cir. 1953, 206 F.2d 303, was an action brought by the United States following a prior suit against federal officials, in which the court stated:

> "As is seen, the United States is not named as a party and the court throughout its entertainment of the action has conducted the case upon its holding that the United States is not a party and is not a necessary or indispensable party to the maintenance of the action. . . . An Assistant Attorney General is the attorney of record for all of the named United States officials and employees who have appeared in the case, and throughout the proceedings he has actively participated in the interests of the Project as directed by the Attorney General of the United States.

> "There is nothing new, irregular, or improper in the fact that government attorneys have been and are attorneys for the government officers and employees who have appeared in the case, and that fact, standing alone, does not bring the United States into the case as a party.

> " . . .

> "The Rank v. Krug action has been on trial for approximately two hundred court days, and the relevant water problems have been presented in detail with governmental experts and counsel actively participating. However, the United States is not a party to the action, and no judgment in the case can be entered against it, and no

judgment that may be entered in the case can be *res judicata* as to the United States. . . . " (Footnotes omitted.) 206 F.2d 303, at 306, 307. See also United States v. Village of Little Chute, Wisconsin, 7 Cir. 1957, 248 F.2d 228; United States v. Zager, E.D. Wis.1968, 280 F.Supp. 877; United States v. Cameron Construction Co., S. D.N.Y.1965, 246 F.Supp. 869.

In United States v. Dollar, 9 Cir. 1952, 196 F.2d 551, reversing United States v. Dollar, N.D.Cal.1951, 100 F. Supp. 881, the Court held:

"As we pointed out on an earlier occasion, United States v. Dollar, 9 Cir., 193 F.2d 114, the ground of the judgment below is that by reason of the intervention of governmental counsel in the defense of the suit against the Maritime Commission, the United States is estopped to relitigate the issues determined in that suit. The decision appears to us at loggerheads with repeated declarations of the Supreme Court in the course of the earlier suit. Land v. Dollar, 330 U.S. 731, 736, 737, 739, 67 S.Ct. 1009, 91 L.Ed. 1209; Land v. Dollar, 341 U.S. 737, 739, 741, 71 S.Ct. 987, 95 L.Ed. 1331. It is for that tribunal, not for us or for the district judge, to determine whether those declarations still hold good." at 553.

Judge Pope in his concurring opinion, points to the consistency of a government attorney representing public officials, without a res judicata bar on the United States to later raise the defense of sovereign immunity:

"When an individual holding public office is sued, as here, it is not in the public interest that he should not be defended. I think that a public policy that he should be defended and the propriety of his challenged acts asserted, is fully consistent with the rule of sovereignty immunity. Yet appellees would have it that if the Attorney General provides this defense, the Government is bound practically to the same extent as if it had been properly made a defendant in the first place.

"The argument that litigation should have an end, that the private litigant who sues the public officer as an individual should not be denied the fruits of a hard won victory, is not without appeal. But I think that the public policy behind the rule of sovereign immunity is one which must prevail against these other considerations. That, in my opinion, is why the ordinary rules of collateral estoppel should not apply here." (Footnotes omitted.) 196 F.2d 551, at 554.

See also United States v. Dollar, 9 Cir. 1951, 193 F.2d 114, cert. denied, 1952, 342 U.S. 910, 72 S.Ct. 304, 96 L.Ed. 681.

In Hussey v. United States, 1911, 222 U.S. 88, 32 S.Ct. 33, 56 L.Ed. 106, federal officers were sued in the state court of California, and the United States district attorney appeared, by direction of the Secretary of the Treasury and the Attorney General, on behalf of the United States and conducted the defense. The controversy turned on the effect to be given the decisions of the Supreme Court of California with the jurisdictional act giving jurisdiction to the Court of Claims. Appellants contended that " . . . (1) the judgment of the Supreme Court of California became a rule of property and conclusive of the validity of the title" at 92. The Court held:

"(1) This ground is not tenable. Carr v. United States, 98 U.S. 433, 25 L.Ed. 209, is a parallel case. There, as here, a judgment in an action against officers of the United States in possession of property, in which action the district attorney of the United States, by direction of the Secretary of the Treasury, appeared and defended, was urged in a subsequent action to estop the United States from contesting the title to the property. It was held that the judgment did not constitute an estoppel. To the same effect is United States v. Lee, 106 U. S. 196, 217, 1 S.Ct. 240, 27 L.Ed. 171."

222 U.S. 88, at 93, 32 S.Ct. 33, at 35,. 56 L.Ed. 106.

Land v. Dollar, 1951, 88 U.S.App.D.C. 311, 190 F.2d 366, appeal dismissed on motion of petitioners, 1952, 344 U.S. 806, 73 S.Ct. 7, 97 L.Ed. 628, appears to be contrary to other authority.

". . . While that judgment is not *res judicata* as to the United States, it is *res judicata* as to the Commission and the Secretary. And it is the Commission and the Secretary who have been ordered by this court to deliver possession of the shares. The claim of the United States does not appear to rest upon a record title or upon certificates issued to it, or upon any recorded fact whatever. It appears to rest upon a legal question of agency, and that question has been decided in a suit in which those agents made that claim." at 376.

The District of Columbia court appears to take the position that a judgment involving governmental officials will not be res judicata as to the United States, but the United States in a subsequent suit may only raise matters not actually decided in the prior suit. This court refuses to follow this reasoning in view of the cases cited above which require the preservation of the sovereign immunity of the United States.

Assuming, arguendo, that the District of Columbia case is a correct interpretation of the law, the facts are substantially different here and would dictate a contrary result.

■ Restatement of Judgments, § 10 (1942) states:

" . . .

"(2) Among the factors appropriate to be considered in determining that collateral attack should be permitted are that

"(a) the lack of jurisdiction over the subject matter was clear;

"(b) the determination as to jurisdiction depended upon a question of law rather than of fact;

"(c) the court was one of limited and not of general jurisdiction;

"(d) the question of jurisdiction was not actually litigated;

"(e) the policy against the court's acting beyond its jurisdiction is strong."

The Board certainly has limited jurisdiction, and there is compelling policy to maintain the sovereign immunity of the United States. See Comment (b) at 60–62. In addition, Chamberlain and Duggan did not willingly and without reservation submit the federal claim to the Board so as to bar a federal court from taking evidence and deciding the immunity question. England v. Medical Examiners, supra; Roy v. Jones, 3 Cir. 1973, 484 F.2d 96; Durfee v. Duke, 1963, 375 U.S. 106, 114 and n. 12, 84 S. Ct. 242, 11 L.Ed.2d 186.

Although it cannot be said lack of jurisdiction is absolutely clear, the facts here strongly suggest a collateral proceeding to decide the federal sovereign immunity claim is not without justification. An Army commander of a government facility and a private corporation interacted to provide services to the government in that facility, and both were held civilly liable for polluting state waters in the production of army munitions. See, e. g., Lombard Corporation v. Resor, D.C.1970, 321 F.Supp. 687.

### REMOVAL

· ■ The defendants contend the Board proceeding could have been removed to the federal courts, and failure to do so constitutes a waiver of maintaining this action. The government argues that it could not have removed the state action because the Board proceeding was an administrative action and not a court proceeding as required by 28 U.S.C. §§ 1442 and 1442a.[3] Sec-

---

3. "§ 1442. Federal officers sued or prosecuted

"(a) A civil action or criminal prosecution commenced in a State court . . . ."

tion 1442 allows a federal officer to remove a state proceeding to federal court when prosecuted civilly or criminally. Section 1442a permits removal when members of the armed forces are sued or prosecuted. Whether removal is permitted when a federal official or a member of the armed forces is sued in a state administrative proceeding is not clear, but there is authority and the legislative histories of §§ 1442 and 1442a which indicate that removal was permissible.

Sections 1442 and 1442a must be liberally construed. Haggard v. Lancaster, N.D.Miss.1970, 320 F.Supp. 1252. Otherwise, federal officers may be prevented from having their cases heard in a federal forum because of the artificial standard that the state proceeding was administrative in character rather than a court action.

"Viewed in this context, the ruling of the court below cannot be sustained. The federal officer removal statute is not 'narrow' or 'limited.' Colorado v. Symes, 286 U.S. 510, 517, 52 S.Ct. 635, 637, 76 L.Ed. 1253 (1932). At the very least, it is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law. One of the primary purposes of the removal statute—as its history clearly demonstrates—was to have such defenses litigated in the federal courts. The position of the court below would have the anomalous result of allowing removal only when the officers had a clearly sustainable defense. The suit would be removed only to be dismissed. Congress certainly meant more than this when it chose the words 'under color of . . . office.' In fact, one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court. The officer need not win his case before he can have it removed.

In cases like this one, Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum. This policy should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." Willingham v. Morgan, 1969, 395 U.S. 402, 406–407, 89 S.Ct. 1813, 1816, 23 L.Ed. 2d 396.

The First Circuit in Volkswagen De Puerto Rico, Inc. v. Puerto Rico Labor Relations Board, 1 Cir. 1972, 454 F.2d 38, after discussing case history of removal from an administrative proceeding—see Tool and Die Makers, etc., Assoc. of Machinists v. General Electric, E.D.Wis.1959, 170 F.Supp. 945; California Packing Corp. v. I.L.W.U. Local 142, D.Hawaii 1966, 253 F.Supp. 597; Star Publishing Corp. v. Puerto Rico Newspaper Guild, D.P.R.1969, 303 F. Supp. 760—held that the label given to a state court proceeding is not dispositive as to removability, and that focus must be "on a number of relevant factors, including the Board's procedures and enforcement powers, the locus of traditional jurisdiction over breaches of contract, and the respective state and federal interests in the subject matter and in the provision of a forum." Volkswagen De Puerto Rico v. Puerto Rico Labor Relations Board, supra, at 44. See also State of North Carolina v. Carr, 4 Cir. 1967, 386 F.2d 129.

Here, the Board's procedures are adjudicatory, and not of a legislative nature, the Board can assess penalties for violation of an environmental law, and can file and enforce liens on property of those persons found in violation of the law. The question of sovereign immunity of federal officials is more properly one for a federal rather than a state administrative forum.

The question remains what is the effect of Chamberlain's and Duggan's failure to remove. The answer is closely tied to the res judicata effect of the

"§ 1442a. Members of armed forces sued or prosecuted

"A civil or criminal prosecution in a court of a State of the United States . . . ."

Board's determination of its jurisdiction.

As to the United States, there cannot be a waiver of the right to present the sovereign immunity claim in a federal court. The United States was not a party to the Board's proceeding. Nor was the United States required to intervene in the state action. Alonzo v. United States, 10 Cir. 1957, 249 F.2d 189, 197, cert. denied, 1958, 355 U.S. 940, 78 S.Ct. 429, 2 L.Ed.2d 421; United States v. Farmers State Bank, supra, at 582; United States v. Deasy, D.Idaho 1928, 24 F.2d 108, 110. In Stapleton v. $2,438,110, 3 Cir. 1972, 454 F.2d 1210, 1217, cert. denied, 1972, 409 U.S. 894, 93 S.Ct. 111, 34 L.Ed.2d 151, involving a question of waiver, the court held that "The United States never waived its right to question jurisdiction. Lack of subject matter jurisdiction may not be waived by the parties. Hospoder v. United States, 209 F.2d 427, 429 (3rd Cir. 1954); Forgione v. United States, 202 F.2d 249, 253 (3rd Cir. 1953), cert. denied, 345 U.S. 966, 73 S.Ct. 950, 97 L. Ed. 1384 (1953)." See also Minnesota v. United States, 1939, 305 U.S. 382, 388–389, 59 S.Ct. 292, 83 L.Ed. 235. The fact that an Assistant United States Attorney appeared on behalf of the individual defendants at the Board hearing is of no consequence. See discussion, supra. The United States brings this action in its own right.

Although it is not material to the determination here, there is a serious question if Chamberlain or Duggan waived any rights in view of the Supreme Court's holding in England v. Medical Examiners, supra [4]:

". . . That is, he may inform the state courts that he is exposing his federal claims there only for the purpose of complying with [Government & Civic Employees Organizing Committee v.] Windsor, [353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894,] and that he

intends, should the state courts hold against him on the question of state law, to return to the District Court for disposition of his federal contentions. Such an explicit reservation is not indispensable; the litigant is in no event to be denied his right to return to the District Court unless it clearly appears that he voluntarily did more than Windsor required and fully litigated his federal claims in the state courts. When the reservation has been made, however, his right to return will in all events be preserved." (Footnotes omitted.) at 421–422.

## ABSTENTION

The only question raised by the United States here, and by the individual defendants at the Board proceeding, is federal sovereign immunity. The questions subsumed in this determination, i. e., whether the officials acted within the scope of their authority, or whether the United States waived its immunity by congressional act, are of a federal nature. Neither the United States nor the defendants at the Board level raised any issue of state law, nor is the subject matter in dispute state related or local in character. See, e. g., Howell v. Citizens First National Bank of Ridgewood, 3 Cir. 1967, 385 F.2d 528; but cf. Railroad Commission of Texas v. Pullman Co., 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; Burford v. Sun Oil Co., 1943, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424; Alabama Public Service Commission v. Southern Railway Co., 1951, 341 U.S. 341, 71 S.Ct. 762, 95 L. Ed. 1002; Allegheny Airlines v. Pennsylvania Public Utility Commission, 3 Cir. 1972, 465 F.2d 237, cert. denied, 1973, 410 U.S. 943, 93 S.Ct. 1367, 35 L. Ed.2d 609. Nor has it been shown that any resolution of state law might make unnecessary a decision on the federal immunity question. Wisconsin v. Constantineau, 1971, 400 U.S. 433, 437–439, 91 S.Ct. 507, 27 L.Ed.2d 515. Cf. Leiter

4. See the majority and concurring opinions in Roy v. Jones, supra, regarding the procedural posture of a case for the England abstention principles to apply; and England v. Medical Examiners, at 422 n. 13.

Minerals, Inc. v. United States, supra at 228–230. A stay under these circumstances would be a needless delay of the court's determination of a solely federal issue with the United States as party plaintiff.

In Island Airlines, Inc. v. C. A. B., 9 Cir. 1965, 352 F.2d 735, where it was urged that when proceedings in the state courts had not been terminated, see p. 739, n. 4, ¶ 4, the court held in upholding the supremacy of federal law:

> "We agree with the district court's conclusion:
>
> 'The United States may lawfully maintain suits in its own courts to prevent interference with the means it adopts to exercise its powers of government and to carry into effect its policies.' (Citations omitted.)
>
> "This is true, and injunctive relief will be granted, even though a state court action is pending raising the same issue, but with different parties. United States v. Deasy, 24 F.2d 108 (D.Idaho 1928). . . ." at 744.

See also Id. at 742; United States v. Taylor's Oak Ridge Corp., E.D.Tenn. 1950, 89 F.Supp. 28; United States v. Conti, S.D.N.Y.1939, 27 F.Supp. 756.

The policy reason underlying the abstention question here is similar to that which permits the United States to maintain a separate action to protect its sovereign interest in the face of the anti-injunction statute, and a res judicata bar, i. e., the overriding interest of the United States.

The United States is not a party to the Board proceeding. The court must exercise its jurisdiction "to prevent the effectuation of state court proceedings that might conflict with the ultimate federal court judgment." Leiter Minerals, Inc. v. United States, supra at 228. It is anomalous to argue the United States is exempt from the anti-injunction statute and is not bound by res judicata to protect its interests, but that this court should abstain from hearing the matter pending a state determination of a purely federal concern.

This case presents an unusual situation. The parties stipulated that the penalties and liens will not be enforced or collected pending the final disposition of the instant case. In return, the government withdrew its motion for a preliminary injunction. In the meantime, the Commonwealth Court stayed the appeal [5] of the Board's decision. If the court were to abstain from hearing the matter and dismiss the action on Younger v. Harris principles,[6] or because of the anti-injunction statute, the penalties and liens might become collectible. This would be an abuse of the court's discretion in view of the government's interest.

## OTHER ARGUMENTS

■ Defendants contend that the court should decline jurisdiction since "the Plaintiff and the real parties in interest have failed to exhaust their administrative and judicial remedies." The exhaustion requirement does not apply to state judicial remedies. Gibson v. Berryhill, 1973, 411 U.S. 564 at 574 n. 13, 93 S.Ct. 1689, 36 L.Ed.2d 488. In addition, the administrative phase of the state proceedings has been completed, and administrative expertise, discretion and factfinding are no longer involved. Questions of exhaustion of remedies and

---

5. Following the decision of the Board, and after this action was commenced, the individual defendants at the Board level filed an appeal to the Commonwealth Court. The appeal was filed allegedly as a protective measure, and presumably can be terminated by the individual defendants.

The intervening appellee, Department of Environmental Resources, filed a motion to quash the appeal as untimely. The motion is still pending.

6. See, e. g., Younger v. Harris, 1971, 401 U. S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669; Samuels v. Mackell, 1971, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688; Gibson v. Berryhill, 1973, 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488. This is presuming the *Younger* principle applies in a civil context; see Judge Aldersert's concurring opinion in Roy v. Jones, supra.

abstention principles should not be confused. Gibson v. Berryhill, supra.

It is finally contended that "The complaint fails to state a cause of action in that Plaintiff, United States of America, is subject to State requirements respecting control and abatement of pollution." Defendants here allege from "October 18, 1972, onward, the United States has consented to any suit for pollutional discharges from federal facilities." This allegation as well as other questions involving sovereign immunity are for this court's determination. Nevertheless, it is to be noted that the Board did not assess any penalties for dates subsequent to October 4, 1972.

The motion to dismiss will be denied.