**COMMONWEALTH OF PUERTO RICO**

v.

**Angel PEREZ CASILLAS, Rafael Torres Marrero, Rafael Moreno Morales, Luis Reveron Martinez, William Colon Berrios, Jose Rios Polanco, Juan Bruno Gonzalez, Nelson Gonzalez Perez, Jaime Quiles Hernandez, Nazario Mateo Espada.**

**COMMONWEALTH OF PUERTO RICO**

v.

**Luis Daniel ERAZO FELIX, Roberto Morales Rivera, a/k/a Rocky, Eugene Rios Santiago, Carlos Santiago Borrero, Carlos Rivera Falu, Luis A. Vargas Lebron and Alejandro Gonzalez Malave**

**United States of America, Petitioner, Petition for Removal, Motion for Expedited Partial Remand and for Compelling the Return of Luis Reverón Martinez to the Custody of the Attorney General of the United States.**

Civ. No. 85–2272 (JAF).

United States District Court,
D. Puerto Rico.

Dec. 4, 1985.

William Fred Santiago, Independent Sp. Prosecutor, José M. Ortiz-Miller, Hato Rey, Puerto Rico, Secretary of Justice of P.R., Federal Litigations Div., Dept. of Justice, San Juan, Puerto Rico, for plaintiffs.

Gary H. Montilla, Asst. U.S. Atty., Hato Rey, Puerto Rico, for petitioners U.S.A. and U.S. Marshal.

William Bradford Reynolds, Asst. Atty. Gen., Criselda Ortiz, Atty., Civil Rights Div., Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION IN SUPPORT OF ORDER

FUSTÉ, District Judge.

The above-captioned criminal cases involving charges of first-degree murder and kidnapping against former police officers were removed to this Court from the Superior Court of Puerto Rico, Utuado Part. The petition for removal was filed by the United States on November 12, 1985. Removal was prompted by the fact that within the mentioned criminal cases, identified by the Superior Court of Puerto Rico, Utuado Part, with numbers 85–530, 85–498, 85–505, and 85–512, an Independent Special Prosecutor, acting on behalf of the Commonwealth of Puerto Rico, filed a petition for habeas corpus ad testificandum concerning Luis Reverón-Martínez, hereinafter referred to as "Reverón". The Utuado Court granted said civil relief as a separate procedural incident within the criminal cases and ordered that Reverón, a federal prisoner, be turned over by the United States Marshal to local authorities indefinitely until the conclusion of local criminal proceedings. Reverón, originally charged as a defendant in the Utuado Court, is now also a witness against the other co-defendants.[1]

---

1. During the hearing held in this case on November 25, 1985, the Court inquired from contract counsel for the Independent Special Prosecutor and from counsel for Reverón on the status of said convict, whether a defendant, a

This case raises important questions affecting the interrelationship of federal and state courts in the administration of the criminal justice system. We have taken judicial notice of proceedings in Criminal Case No. 84–0070 (CC), entitled *United States of America v. Luis Reverón-Martínez*, which case was tried to conclusion before this Court. A review of relevant parts of that record is in order.

### Factual Background

On March 28, 1985, Reverón was convicted before this Court, in Criminal No. 84–0070 (CC), for conspiracy to obstruct justice and perjury, in violation of 18 U.S.C. §§ 371, 1621, and 1623. On May 21, 1985, a provisional sentence of imprisonment was imposed by U.S. District Judge Carmen Consuelo Cerezo. Judge Cerezo concluded that a preponderance of the evidence showed that Reverón was suffering from a mental defect. 18 U.S.C. § 4244. As a result thereof, the provisional sentence was entered. Reverón was committed to the custody of the Attorney General of the United States or his authorized representative for psychiatric treatment and hospitalization. The Attorney General designated the U.S. Medical Center for Federal Prisoners in Springfield, Missouri as the facility where Reverón was to be committed under the terms of the provisional sentence.

On May 10, 1985, the Independent Special Prosecutor petitioned the Superior Court of Puerto Rico, Utuado Part, for a writ of habeas corpus ad prosequendum. Through this writ, the Independent Special Prosecutor intended to remove Reverón from federal custody in order to prosecute him before the Utuado Court for whatever criminal offenses he committed resulting from the Cerro Maravilla incident of July, 1978.[2] Reverón was initially scheduled to appear at a preliminary hearing on August 6, 1985. Having notice of Reverón's federal conviction, provisional sentence, and federal commitment, the Superior Court of Puerto Rico, Utuado Part, issued a first writ of habeas corpus ad prosequendum on July 29, 1985. The United States of America consented to the writ and turned over Reverón to the pertinent local authorities on August 4, 1985.

On August 15, 1985, the Independent Special Prosecutor appeared before this Court and filed, in Criminal No. 84–0070 (CC), *United States of America v. Luis Reverón-Martínez*, a request for limited intervention and an informative motion. Said filing informed this Court that criminal proceedings against Reverón had been continued to September 4, 1985. The Independent Special Prosecutor sought a federal order that would allow Reverón to remain in Puerto Rico until the completion of all local judicial proceedings against him. Having consented to the original local habeas corpus petition, the United States of America requested this Court to order that Reverón be returned to the U.S. medical facility in Springfield, Missouri if any hearing was continued or scheduled for any date after October 4, 1985. By so doing, the United States reaffirmed its consent to the local authorities having custody over Reverón for at least thirty additional days in order to facilitate local prosecution efforts against him for the charges of first-degree murder and kidnapping mentioned before.

On September 23, 1985, Judge Cerezo ordered the Independent Special Prosecutor to define the terms of stay of Reverón in Puerto Rico for the upcoming local judicial proceedings. The Independent Special Prosecutor responded with a request similar to the earlier one, that is, that Reverón was needed as a potential defendant. In

---

prosecution witness or both. There was no clear response.

**2.** The position of Independent Special Prosecutor was created by special local legislation. Said officer is entrusted with the prosecution of any crime related to the Cerro Maravilla incident of July 25, 1978. Criminal case No. 84– 0070 (CC) relates to the Cerro Maravilla incident. The conviction for conspiracy to obstruct justice and perjury in 84–0070 arose from acts of defendant Reverón while the Cerro Maravilla events were the object of a Federal Grand Jury investigation.

addition, Judge Cerezo was informed about the fact that Reverón was now a key witness for the prosecution. On October 11, 1985, Judge Cerezo denied the Independent Special Prosecutor's motion seeking Reverón's indefinite stay in Puerto Rico. The following factors were dispositive: Reverón was a federal inmate in federal custody since the provisional sentence of May 21, 1985; the court had determined that he needed immediate psychiatric treatment for a depressive disorder; and, the local proceedings could take substantial time, thus hampering the Attorney General's arrangements for the psychiatric treatment and hospitalization of Reverón at the mentioned federal facility in Springfield, Missouri. At all times, the United States has opposed Reverón's indefinite stay in Puerto Rico.[3] The government argues that the provisional sentence is controlling.

Pursuant to the provisional sentence, 18 U.S.C. § 4244, Judge Cerezo ordered the Independent Special Prosecutor and/or the Commonwealth authorities to return Reverón to the U.S. Medical Center in Springfield, Missouri for hospitalization and treatment. On October 18, 1985, the Independent Special Prosecutor filed a motion for reconsideration, which motion was denied with a further order that Reverón be returned to federal authorities not later than October 23, 1985. See App. A to this Memorandum Opinion.[4]

Instead of complying with this Court's order regarding the return of Reverón to federal authorities, the Independent Special Prosecutor appeared before the Superior Court of Puerto Rico, Utuado Part, and as of October 24, 1985, obtained from said court a second writ of habeas corpus, this time ad testificandum. As stated before, the order was obtained against the United States Marshal, not in an independent civil action, but as an incident within the four criminal cases pending against the named defendants as they appear in the caption of this case. The terms of the second writ

were to the effect that Reverón was to remain in Puerto Rico as a witness under local custody until the completion of all pending local criminal proceedings.

The procedural situation described above created the inevitable unpleasant conflict between federal and state jurisdictions which both, courts and parties, should avoid. The issuance of the second writ of habeas corpus was in open contradiction with the terms of Judge Cerezo's post-conviction orders in Criminal No. 84–0070 (CC). As of today, said orders are binding. In light of this factual background, we turn to the issues of removal jurisdiction, the validity of the writ of habeas corpus ad testificandum, and the federal remedy.

*Removal Jurisdiction*

The federal officer removal statute, 28 U.S.C. § 1442(a)(1) provides:

(a) A civil action or criminal prosecution commenced in a state court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Any officer of the United States or any agency thereof, or person acting under him for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

■ The purpose of the federal officer removal statute is clear. In order to prevent a paralysis in the operations of the federal government, *Gay v. Ruff*, 292 U.S. 25, 32, 54 S.Ct. 608, 611, 78 L.Ed. 1099 (1934), a federal officer sued in state court has a right to elect a federal forum in which to raise any colorable defense. *Arizona v. Manypenny*, 451 U.S. 232, 241–42, 101 S.Ct. 1657, 1664, 68 L.Ed.2d 58 (1981);

---

**3.** As of today, there is no timetable designed to achieve final disposition of local proceedings.

**4.** The order mentions alternative remedies available to Reverón and/or the Independent Special Prosecutor, none of which had been interposed as a condition precedent to the requested relief.

*Willingham v. Morgan,* 395 U.S. 402, 406, 89 S.Ct. 1813, 1815, 23 L.Ed.2d 396 (1969). "The rationale for granting a right of removal to federal officers acting under color of office has always been the protection of the exercise of legitimate federal authority against interference by individual states through their courts." 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure,* § 3727 at 445 (2d ed. 1985).

■ Because the right of removal is a crucial procedural vehicle in the exercise of legitimate federal authority, Section 1442 receives a liberal construction. *Colorado v. Symes,* 286 U.S. 510, 517, 52 S.Ct. 635, 637, 76 L.Ed. 1253 (1932); *Logemann v. Stock,* 81 F.Supp. 337, 338 (D.Neb.1949).

■ Even though the Independent Special Prosecutor has conceded the right to removal in writing and during oral argument, since this Court is one of limited jurisdiction and the Federal/State relations have been disturbed, the right to removal should be examined. This case was removed because the requirements of Section 1442 were satisfied. The petition for habeas corpus ad testificandum and the resulting writ issued against the United States Marshal by the Utuado Court, not in an independent civil suit, but as an incident in pending criminal proceedings of local concern, is part of a "... civil action or criminal prosecution commenced in a state court." 28 U.S.C. § 1442(a). *See United States v. Pennsylvania Environmental Hearing Board,* 377 F.Supp. 545, 552–53 (M.D.Pa.1974). There is no doubt that the United States Marshal is an "officer of the United States", thus making the action one against a federal officer which can be the object of removal. *See* 28 U.S.C. § 569(b). Under the terms of the writ of habeas

corpus as issued, the United States Marshal was brought before the local court for acts "under color of such office." The validity of the defenses of the United States Marshal, as an officer of the Department of Justice of the United States, should be determined before this forum. *Willingham v. Morgan,* 395 U.S. at 402, 409, 89 S.Ct. at 1817.

We find that removal was proper. Unfortunately, criminal cases of local concern had to be removed in order for this Court to obtain jurisdiction over the incidental habeas corpus proceeding. This, of course, is the result of the Independent Special Prosecutor's choice of procedural options.

### Validity of the Local Writ

If one is accused and ultimately convicted by the courts of two concurrent jurisdictions, that person cannot be at the same place to serve separate sentences. Thus, a rule has emerged that to avoid potential conflicts between federal and state courts, the court that first acquires control over the person must be permitted to exhaust its remedies. *See Ponzi v. Fessenden et al.,* 258 U.S. 254, 260, 42 S.Ct. 309, 310, 66 L.Ed. 607 (1922), citing, *Covell v. Heyman,* 111 U.S. 176, 4 S.Ct. 355, 28 L.Ed. 390 (1884); *see also Commonwealth v. Domanski,* 332 Mass. 66, 123 N.E.2d 368, 372–73 (1954). In *Ableman v. Booth,* 21 How. 506, 523–24, 62 U.S. 506, 523–24, 16 L.Ed. 169 (1859), the United States Supreme Court held that state courts lack jurisdiction to issue writs of habeas corpus to order the production, or otherwise interfere, with prisoners in federal custody.[5] The federal interest in ensuring the safety and custody of a federal inmate outweighs the state's interest in effective law enforcement as it pertains to the immediate physi-

---

5. This principle has been repeatedly reaffirmed. *See In re Tarble,* 13 Wall. 397, 80 U.S. 397, 20 L.Ed. 597 (1871); *Robb v. Connolly,* 111 U.S. 624, 4 S.Ct. 544, 28 L.Ed. 542 (1884); *Special Pros. of N.Y. v. United States Atty. for S.D.N.Y.,* 375 F.Supp. 797, 802–04 (S.D.N.Y.1974); C. Wright, *Law of Federal Courts,* § 46 at 277 (4th ed. 1983); C. Warren, *Federal and State Court Interference,* 43 Harv.L.Rev. 345, 353–59 (1930). Under the Supremacy Clause of the United

States Constitution, Art. VI, a federal court is empowered to issue writs of habeas corpus to discharge prisoners in state custody for federal constitutional violations. *Ex parte Royall,* 117 U.S. 241, 250, 6 S.Ct. 734, 739, 29 L.Ed. 868 (1886); *see also* 28 U.S.C. § 2254. The Supremacy Clause prohibits a state court from granting the same relief to federal prisoners. *Ex parte Royall,* 117 U.S. at 250–51, 6 S.Ct. at 739–40.

cal custody of the inmate. In *Ableman*, the Supreme Court stated:

> No state judge or court, after they are judicially informed that the party is imprisoned under the authority of the United States, has any right to interfere with him, or to require him to be brought before them.

*Ableman v. Booth*, 21 How. at 524, 62 U.S. at 524.

■ On principles of comity, the Attorney General of the United States may consent, in its discretion, to having federal prisoners brought before local authorities. *Ponzi v. Fessenden et al.*, 258 U.S. 261–62, 42 S.Ct. at 311; *Commonwealth v. Swenor*, 3 Mass.App. 65, 323 N.E.2d 742, 744 (1975). The United States, *a fortiori*, has exclusive jurisdiction over prisoners in federal custody, and without its consent, a writ of habeas corpus issued by a state tribunal is null and void.

These principles so fundamental to harmonious relations between the state and federal jurisdictions have been recognized by the Supreme Court of Puerto Rico. *Ex parte Corretjer*, 50 D.P.R. 211 (1936). There, a prisoner serving a federal sentence in a local correctional institution, brought a petition for habeas corpus relief in local court challenging the legality of his detention. The Supreme Court of Puerto Rico rejected the significance of petitioner's confinement in a local rather than a federal penitentiary. The dispositive factor was his imprisonment pursuant to a federal sentence. The court held:

> [S]ince the ... petition shows that he is imprisoned by virtue of a sentence of the judge who presides over the District Court of the United States for the District of Puerto Rico, executed by the Marshal of the same, this Supreme Court has no right to interfere in the matter.

*Ex parte Corretjer*, 50 D.P.R. at 217, 50 P.R.R. 202, 208; *see also Correa Negrón v. Pueblo*, 104 D.P.R. 286, 292 (1975).

■ It follows that the United States has exclusive jurisdiction over the custody of Reverón. Reverón is a federal convict under federal custody since the entry of the provisional sentence imposed by Judge Cerezo on May 21, 1985. We reaffirm our holding that the writ of habeas corpus ad testificandum entered by the Superior Court of Puerto Rico, Utuado Part, on October 24, 1985, is null and void.

It should be clear that this Court is sensitive to the legitimate interests of the Commonwealth of Puerto Rico, as well as those of the United States. This holding should not be construed as an attempt to interfere with the pending criminal prosecutions before the Utuado Court. The Commonwealth has a legitimate interest in prosecuting those responsible for any criminal violations resulting from the Cerro Maravilla events. This includes using Reverón as a state witness if the Commonwealth deems it proper. However, as Judge Cerezo previously found, any attempt by local authorities to obtain Reverón's presence should be made through proper channels, commencing with a petition directed to the Attorney General of the United States.

### Federal Remedy

Having determined that the United States has a greater interest than the Commonwealth of Puerto Rico in the custody of Reverón, we granted the requested relief.[6] This Court, in aid of its jurisdiction and to protect and effectuate its judgment in Criminal Case No. 84–0070 (CC), has vacated the writ of habeas corpus ad testificandum entered by the Superior Court of Puerto Rico, Utuado Part, dated October 24, 1985. Criminal cases 85–530, 85–498, 85–505, and 85–512, pending before said Court, have been remanded for further proceedings not inconsistent with our order to vacate. Reverón has been placed under federal custody. We further hold that this order does not contravene the Anti-Injunction Act, 28 U.S.C. § 2283. The restrictions imposed by that statute on the equitable power of the federal courts do not apply when the United States seeks injunctive relief to prevent, as here, the frustra-

---

6. Order of November 25, 1985, App. B.

tion of a superior federal interest. *See, e.g., Leiter Minerals v. United States,* 352 U.S. 220, 225–26, 77 S.Ct. 287, 290–91, 1 L.Ed.2d 267 (1957); *First Fed. S. & L., Boston v. Greenwald,* 591 F.2d 417, 424 (1st Cir.1979);[7] *see also United States ex rel. Fort v. Meiszner,* 319 F.Supp. 693, 697 (N.D.Ill.1970).

We cannot close without expressing that the absence of the Independent Special Prosecutor during the hearing held on November 25, 1985 was unfortunate. The Court did not have the benefit of his advice on the matter. To further complicate our task of putting this matter in its proper legal perspective, counsel under contract with said officer was not aware of the legal motivation for the challenged Utuado proceedings. Simply, he had no knowledge of the nuts and bolts that brought us here. To our surprise, the Commonwealth's position outlined during oral argument constituted a total departure from known principles related to habeas corpus law. It was argued that the second local writ (ad testificandum) was obtained to achieve a secondary gain for Reverón, i.e., a collateral modification of the provisional sentence imposed by this Court in Criminal 84–0070 (the transfer of Reverón to a different penal institution). If this was the true purpose behind obtaining the writ, then the procedure followed is, to say the least, contradictory to the terms of the petition that generated the issuance of the second writ. Contradiction does not end here. Contract counsel represented to the Court that the Commonwealth would agree to having the writ of habeas corpus ad testificandum vacated if Reverón was transferred out of Springfield, as if the matter was open to negotiation. It so happens that the validity of a writ of habeas corpus issued by a learned judge of the Superior Court, obviously without being fully advised as to legal consequences, is not a matter open to negotiation. This Court is not in the business of negotiating the validity of writs. When the balance of Federal/State relations is put in such obscure perspective, the matter becomes one of principle. Argument of this nature is not favored by this Court. Said course of action has not advanced the efficient administration of justice. Fed.R.Civ.P. 1, 11; 32 L.P.R.A. App. II 1, 9.

This memorandum opinion supports our order granting specific relief entered on November 25; 1985. Judgment shall be entered accordingly. The Clerk shall file this document forthwith.

IT IS SO ORDERED.

## APPENDIX A

### UNITED STATES OF AMERICA, Plaintiff

vs

### LUIS REVERON–MARTINEZ, Defendant

### CRIMINAL 84–0070CC
### ORDER

The Commonwealth of Puerto Rico's Independent Special Prosecutor for the Cerro Maravilla events has filed today a Motion Requesting Reconsideration of our Order of October 15, 1985. That order provided that convicted defendant Luis Reverón-Martinez was to be returned to the United States Medical Center for Federal Prisoners at Springfield, Missouri where he was committed pursuant to the terms of our Provisional Sentence and that the Commonwealth authorities should make any future arrangements for Mr. Reverón-Martinez'

---

**7.** If removal in this case caused any friction with the pending criminal prosecutions in local court, it is primarily a result of the Independent Special Prosecutor's filing of the writ of habeas corpus as part of four consolidated criminal cases and not as an independent civil suit. Any potential conflict or inconvenience with those prosecutions is lessened by this Court's partial remand order. Given the peculiar circumstances of this case, we do not decide if the principles of equitable restraint in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) apply, if at all, where the United States has shown a superior federal interest. *Compare Los Angeles v. Lyons,* 461 U.S. 95, 112, 103 S.Ct. 1660, 1670–71, 75 L.Ed.2d 675 (1983), with *Colorado River Water Conser. Dist. v. United States,* 424 U.S. 800, 816 n. 23, 96 S.Ct. 1236, 1246 n. 23, 47 L.Ed.2d 483 (1976).

return to Puerto Rico when proceedings related to criminal charges pending against him at the Superior Court of Puerto Rico, Utuado Division, require his presence. What this means is that the Independent Special Prosecutor must in the future address any matter having to do with defendant Reverón-Martinez' place of commitment to the proper federal authority: the Attorney General. *See gen.:* 18 U.S.C. § 4247(i). The Independent Special Prosecutor now petitions the Court to order that Mr. Reverón-Martinez remain in Puerto Rico in the mental hospital he is now confined in "during the time considered medically appropriate," that we order the Attorney General to pursue a contractual arrangement with the Commonwealth which would permit defendant's continued treatment and presence in Puerto Rico and that, alternatively, if we deny entering the order that we stay effectiveness for ten (10) days until the Circuit Court has been able to consider a motion for stay pending appeal. Petitioner also refers to a hearing to be held October 23, 1985 in the Utuado Court where defendant's presence is necessary.

The Court is not aware of Mr. Reverón-Martinez having filed any appeal on this matter and we have serious doubts as to the Independent Special Prosecutor's standing to do so, not to mention the anomaly of an appeal by the prosecutor on behalf of this defendant. It cannot seriously be argued that the Independent Special Prosecutor can act at the same time as prosecutor against defendant Reverón-Martinez in the Utuado court and as advocate for him in this forum.

On the matter of confinement, this defendant is under the custody of the Attorney General since May 21, 1985. The Court cannot "order" the Attorney General to enter into negotiations or any type of arrangements with the Commonwealth of Puerto Rico regarding a particular place of confinement, where he will receive treatment or where he will be incarcerated. See 18 U.S.C. §§ 4082 and 4244(d). Pursuant to the statute under which Mr. Reverón-Martinez was sentenced, the Court's authority is limited to ordering commitment to the custody of the Attorney General who shall hospitalize him for care and treatment in a suitable facility until the maximum term of imprisonment is completed or until the director of the facility in which he is hospitalized certifies that he has recovered, whereupon he will be brought before the court for final sentencing. See: 18 U.S.C. § 4244. After Mr. Reverón-Martinez was committed to a mental facility chosen by the Attorney General, the Independent Special Prosecutor obtained a writ of habeas corpus ad prosequendum from the Puerto Rico Utuado Court to assure defendant's presence at the Utuado criminal proceedings and defendant was then transferred. Thereafter, the Independent Special Prosecutor asked that Reverón-Martinez be allowed to remain for additional periods in Puerto Rico due to continuances in the Utuado proceedings and later, after the court sought clarification, requested that he remain indefinitely in a Puerto Rico mental facility until all local proceedings related to the Cerro Maravilla come to an end. The United States opposed this request and requested an order returning defendant to the medical facility which had been designated by the Attorney General. The Independent Special Prosecutor's request was finally denied by our October 5, 1985 order which is now under reconsideration.

It should be clear to all concerned with the situation of defendant Reverón-Martinez' commitment for treatment that this court has no authority to order the Attorney General to confine him in a particular mental health facility and that any requests of this nature must be channeled in the future to the pertinent authorities. However, in view of the proximity of the October 23, 1985 hearing at which defendant's presence is necessary in Puerto Rico and because the government's request for an order returning defendant to the medical institution at Springfield, Missouri, and our attention to this specific request in the October 5, 1985 order might have given the erroneous impression that Mr. Reverón-Martinez was temporarily beyond the At-

torney General's custody, the court understands that defendant should be allowed by the Attorney General to remain in Puerto Rico pursuant to the writ previously obtained until October 23, 1985 for the hearing to be held in Utuado on that date. Thereafter, Mr. Reverón-Martinez shall be delivered to the custody of the Attorney General who shall decide upon his place of treatment and who shall make all future arrangements deemed necessary by him regarding his place of commitment. The Court shall not consider any future requests of this nature in view of our limited authority on the matter. All other requests contained in the Motion Requesting Reconsideration filed by the Independent Special Prosecutor are hereby DENIED.

SO ORDERED.

### APPENDIX B

### ORDER

Upon consideration of the filings made herein, and after hearing oral argument, the Court orders as follows:

1. Federal prisoner Luis Reverón Martinez is hereby placed under the custody of the Attorney General of the United States or his authorized representative for his immediate confinement in the correctional facility designated by the Attorney General.

2. The Writ of Habeas Corpus ad Testificandum issued by the Superior Court of Puerto Rico, Utuado Part, as an incident in Criminal Cases 85–530, 85–498, 85–505, and 85–512 is hereby VACATED pursuant to this Court's power in aid of its jurisdiction and to protect or effectuate its judgment in Criminal 84–0070 (CC), entitled *United States of America v. Luis Reverón Martinez.*

3. Criminal Cases 85–530, 85–498, 85–505, and 85–512 before the Superior Court of Puerto Rico, Utuado Part, are hereby REMANDED for further proceedings not inconsistent with this Order.

A Memorandum Opinion and Order will be filed at a later date.

IT IS SO ORDERED.