**W. N. HAGGARD et al.**

**v.**

**James A. LANCASTER et al.**

**No. EC 7075.**

United States District Court,
N. D. Mississippi, E. D.

Oct. 13, 1970.

Earl Thomas, G. Lowrey Lucas, Jackson, Miss., Billy J. Jordan, William J. Threadgill, Thomas C. Harvey, Jr., Columbus, Miss., for plaintiffs.

DeWitt T. Hicks, Jr., Joe O. Sams, Jr., Columbus, Miss., Falton O. Mason, Asst. U. S. Atty., Oxford, Miss., for defendants.

## MEMORANDUM OPINION

KEADY, Chief Judge.

Plaintiffs, who are private property owners, initiated this action in the Chancery Court of Lowndes County, Mississippi, (#11,646) seeking to enjoin defendants from using certain portions of a city park known as Lee Park in Columbus, Mississippi, for access to their adjacent property, where defendants proposed to build a multi-family apartment complex. In state court, defendants demurred specially because of the nonjoinder of the Secretary of Housing and Urban Development (HUD), who was asserted to be an indispensable party since his statutory agent, Federal Housing Commissioner, had insured defendants' mortgage agreement and made a regulatory agreement under the National Housing Act in regard to the proposed housing project. The demurrer having been sustained, HUD was made a co-defendant. Certain private defendants filed a cross-bill to enjoin plaintiffs from blocking access to their property. Before a hearing could be held on the merits, HUD timely filed a petition for removal of the entire suit to federal court. Plaintiffs then moved to remand, and after oral argument and submission of memorandum briefs, the case is now before the court for decision on the motion to remand to state court.[1]

The removal petition does not state the specific grounds on which petitioner HUD seeks to remove, but cites 28 U.S.C. §§ 1441(b), 2410 and 1444,[2] and attaches copies of all state court pleadings and exhibits to the petition. At the hearing on the motion petitioner argued another statute not set forth in the petition, 28 U.S.C. § 1442(a)(1),[3] which allows a federal officer to

1. Although the other defendants did not join in the removal petition itself, they supported it in argument and the court granted their request to submit briefs amici curiae favoring removal.

2. § 1441(b) is clearly inapplicable here since the action does not raise any federal question.
§ 2410(a) Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter, to quiet title to or for the foreclosure of a mortgage or other lien upon real or personal property on which the United States has or claims a mortgage or other lien.

§ 1444. Any action brought under section 2410 of this title against the United States in any State court may be removed by the United States to the district court of the United States for the district and division in which the action is pending.

3. § 1442. Federal officers sued or prosecuted
"(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act

remove when sued in state court for acts done under color of his office. The latter section now appears to be the one principally relied upon by petitioner and it is to that statute that the parties have directed their briefs.[4]

■ Plaintiffs' preliminary contention that the removal petition is insufficient for failure to allege grounds justifying removal is not well taken. It is settled law that a removal petition need not show on its face allegations necessary to support removal where they are supplied by the state court record and supporting exhibits.[5] Thus, it is proper for us to review the entire record of the cause in determining removability.

Although neither the parties nor amici curiae have briefed the question, we consider first whether 28 U.S.C. §§ 2410 and 1444, cited in the removal petition, give us jurisdiction of this cause. § 2410 states that the United States may be made a party to any civil action to quiet title to or foreclose a mortgage or other lien against property on which the United States has a mortgage or other lien; § 1444 allows the United

States to remove to the appropriate federal district court any such action brought against it in a state court (Fn. 2). Applied to the instant case, which does not seek mortgage foreclosure, these statutes pose two basic questions: (1) Does plaintiffs' suit for injunctive relief amount to a suit to quiet title, and (2) does the interest of the United States as shown by the deed of trust and regulatory agreement constitute a "mortgage or other lien?"

In interpreting § 2410 courts have adopted the view that the statute is a waiver of sovereign immunity of the United States, and as such, must be strictly construed.[6] Under such interpretation, courts have unanimously held that § 2410 is not mandatory and does not require that the United States be joined as a party.[7] The majority of courts have also held that § 2410 is not an independent ground of federal jurisdiction and that § 1444 does not create removal jurisdiction where no original federal jurisdiction exists under § 2410.[8]

■■ Applying the strict construction rule to the questions raised here,

---

of Congress for the apprehension or punishment of criminals or the collection of the revenue."

4. We note at the outset that defendants have also filed a separate suit in this court (No. EC 7059–K), without joining the United States as a party, seeking a declaratory judgment, injunction and damages against plaintiffs for deprivation of property rights without due process of law in violation of U. S. Constitution, Amendment XIV and 42 U.S.C. § 1985. Because of the pendency of the state suit now sought to be removed, we refused injunctive relief under 28 U.S.C. § 2283, but retained jurisdiction on the declaratory judgment and damage aspects of that case. Defendants have also filed yet another suit in Lowndes County Chancery Court, (#11,681), without joining the United States, seeking to enjoin plaintiffs from interfering with access to defendants' property, but specifically reserving their federal claims. The Chancellor sustained general and special demurrers and also a motion to dismiss in #11,681 on the ground that our case, EC 7059–K, con-

stituted an adequate remedy at law, and the suit is now on appeal in the Supreme Court of Mississippi, Justice Gillespie having denied a motion for preliminary injunction under Miss.Code Ann. § 1657.

5. Poss v. Lieberman, 187 F.Supp. 841 (E.D.N.Y.1960), aff'd 299 F.2d 358 (2 Cir. 1962), cert. den. 370 U.S. 944, 82 S.Ct. 1585, 8 L.Ed.2d 810.

6. Shinaberry v. United States, 142 F.Supp. 413 (D.C.Mich.1956); aff'd 242 F.2d 758, (6 Cir. 1956), cert. den. 353 U.S. 976, 77 S.Ct. 1060, 1 L.Ed.2d 1137; see annotation 5 L.Ed.2d 870.

7. United States v. Cless, 254 F.2d 590 (3 Cir. 1958).

8. See annot. at 5 L.Ed.2d 867–887, citing many cases. But cf. Maule Industries, Inc. v. Tomlinson, 244 F.2d 897 (5 Cir. 1957); United States v. Morrison, 247 F.2d 285 (5 Cir. 1957); First National Bank of Brownsville, Texas v. United States, 172 F.Supp. 757 (D.C.Tex.1959); George v. United States, 181 F.Supp. 522 (D.C.Tex.1960).

i. e., (1) whether the present suit amounts to an action to quiet title and (2) whether the interest of the United States constitutes a mortgage or other lien, it appears that a suit characterized as one for injunctive relief, as here, can nevertheless be in the nature of a suit to quiet title.[9] Thus, the present action meets the first requirement of § 2410. As to the second requirement, however, courts have been more strict, holding that the interest of the United States in the property involved must be plainly classifiable as a mortgage or other lien, thus giving to the word "lien" a narrow, conservative construction. For example, courts have consistently held that § 2410 does not waive sovereign immunity where the United States claims title to the property in question.[10] In one case analogous to the present action, a federal district court held that where a landowner adjoining a United States Post Office sued to quiet his title by attacking an easement which the United States held over his land, § 2410 did not authorize suit against the United States because its interest did not amount to a "lien".[11] The Fifth Circuit has held that § 2410 does not authorize suit by a landowner to quiet title to mineral rights in land which the United States has attempted to condemn for public use on the ground that the interest of the United States does not constitute a lien.[12] In the case sub judice the interest of the United States, although difficult to define with precision, is clearly not a "lien" under § 2410, and the present action is therefore not removable under that section or § 1444.

To sustain removal jurisdiction, there remains only § 1442(a) (1), which allows removal by a federal officer when sued in state court for acts done under color of office. Plaintiffs contend that § 1442(a) (1) is inapplicable here since the only act which the FHA agent has done under color of office is to insure private defendants' mortgage agreement, which is not the subject of the present action. Thus, plaintiffs argue, the agent is not being sued for any wrongful or unauthorized act under color of office, but is a purely nominal party, a mere insurer or guarantor who might at some future time obtain, under the deed of trust and regulatory agreement, the interests presently held by the private owner and mortgagee. Defendants assert that, as plaintiffs conceded in their state-court pleadings, HUD is the real party in interest here because the regulatory agreement relieves the owner-mortgagor of all personal liability, and in case of default, HUD will be left holding the property and covering the other parties' losses. Whether HUD is a necessary party or the real party in interest, however, is not the paramount issue here. We are concerned only with whether the United States comes under the terms of § 1442 (a) (1).

The original purpose of the predecessors of § 1442(a) (1), which date back to 1815, was to protect federal customs officers from interference by state authorities.[13] Congress has amended the statute several times, and in 1948 extended its protection to *all* federal officers sued for acts done under color of office.[14] The purpose of the statute has always been to protect the basic federal interest in enforcing federal law through federal officials and the congressional determination that federal officers need the protection of a federal forum should not be frustrated by a narrow, grudging interpretation of §

---

9. United States v. Morrison, supra.

10. See annot. 5 L.Ed.2d 885–886, citing many cases.

11. Ansonia National Bank of Ansonia, Conn. v. United States, 147 F.Supp. 864 (D.C.Conn.1956).

12. Stewart v. United States, 242 F.2d 49 (5 Cir. 1957).

13. Willingham v. Morgan, 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969).

14. Hart & Wechsler, The Federal Courts & the Federal System, 1147–1150 (1953).

1442(a) (1).[15] Thus, the statute must be liberally construed.[16]

Since the Federal Housing Commissioner has no sovereign immunity but by 12 U.S.C. § 1702 is suable in any court of competent jurisdiction, the Commissioner, if sued in a state court for acts performed under color of office, would be entitled to remove solely on the basis of § 1442(a) (1).[17] The parties have not argued that the Commissioner exceeded his statutory authority in insuring the defendants' mortgage agreement and in making the regulatory agreement relating to the housing project. In fact, it appears certain that the federal agent's act, instead of being personal, was well within the sweep or ambit of his authority, and he was thus unquestionably acting "under color of office." [18] The sole question remaining is whether an action has been commenced against the federal agent *because of his act.* In examining a state court proceeding to determine whether a federal officer has been sued *for* acts under color of office, federal courts look to the substance and not the form of the state proceeding.[19] The court notes that the prayer of plaintiffs' action, inter alia, seeks to enjoin defendants, including HUD, "from participating in any manner whatsoever in the utilization of any portion of the Lee Park property for ingress and egress," alleging that construction of an apartment complex of 68 units, preferably for families of low income, will necessitate excessive use of Park Circle Drive, which is the sole means of ingress and egress to the housing project. Plaintiffs assert that this condition will result not only in a violation of the reversionary conditions under which the City of Columbus holds title to the park as dedicated park property, but also a hazard to the safety and health of plaintiffs, their children and the general public. Plaintiffs also seek to cancel the municipal building permit for the housing project for the reason that it was obtained under misrepresentations. Although they seek the above relief, plaintiffs maintain that they have not sued the Commissioner for any act under color of office, and that his only act related to the project in question was insuring the mortgage. These two contentions are clearly inconsistent, and cannot both stand.

Although the regulatory agreement refers to HUD's role as that of an insurer, the agreement itself clearly shows that HUD is in fact an active and not a passive party to the entire transaction which extensively guides and controls the actions of the private owner and mortgagee. As shown by the regulatory agreement, HUD holds an impressive bundle of rights and in reality is the motivating and dominant party in the entire transaction. As the name of the document indicates, HUD *regulates* under the agreement most of the owner's important actions in building and operating the project. The form of regulatory agreement itself is supplied and its terms dictated by HUD. The agreement prescribes the lengths and terms of all leases and rents to be paid for each apartment. HUD must give written approval to all encumbrances and for any disbursements beyond normal operating expenses and can veto without cause any management contract. The owner must submit to

15. *Willingham,* supra.

16. *Willingham,* supra; State of Colorado v. Symes, 286 U.S. 510, 52 S.Ct. 635, 76 L.Ed. 1253 (1932).

17. Garden Homes, Inc. v. Mason, 249 F.2d 71 (1 Cir. 1957), cert. den. 356 U.S. 903, 78 S.Ct. 562, 2 L.Ed.2d 580; Sarner v. Mason, 228 F.2d 176 (3 Cir. 1956); James River Apartments, Inc. v. F.H.A., 136 F.Supp. 24 (D.C.Md.1955).

18. *Willingham,* supra; DeBusk v. Harvin, 212 F.2d 143 (5 Cir. 1954); Preston v. Edmondson, 263 F.Supp. 370 (D.C.Okl. 1967); Ove Gustavsson Contracting Co. v. Floete, 176 F.Supp. 841 (D.C.N.Y.1959); Jones v. Elliot, 94 F.Supp. 567 (D.C.Va. 1950); Ohio v. Dorko, 247 F.Supp. 866 (D.C.Ohio 1966).

19. North Carolina v. Carr, 386 F.2d 129 (4 Cir. 1967).

HUD a thorough annual report. If the owner violates any term of the agreement and does not correct it within 30 days after HUD has notified him of its existence, HUD can request the mortgagee to foreclose and the mortgagee may assign his interest entirely to the Commissioner, thereby placing the whole project in the latter's complete control. Such rights, powers and attributes are not those of an ordinary insurer or guarantor, but of an active participant whose presence and determinations strongly influence all concerned parties.

In addition to rights and powers, HUD also has significant duties and liabilities. It insures the entire project in the amount of $947,000 with virtually no personal liability on the owner. Should the project fail, HUD will bear nearly the entire burden of the loss. This powerful financial backing by the government was undoubtedly the prime factor motivating the entire transaction; without HUD there would have been no project.

We also note the profound governmental interest in low-income housing projects operated with strict government supervision, as revealed by the congressional indications of purpose and intention in creating and financing the type of project we are concerned with here. 12 U.S.C. § 170lt provides that the highest priority shall be given to such projects. Furthermore, courts have heretofore held that one of the primary purposes of the National Housing Act, under which HUD was operating, is to afford the government the finest protection of its security interest.[20] These expressions of policy indicate that the federal interest in such projects is substantial rather than nominal.

The fundamental rights and duties of HUD under the statutes and regulatory agreement convince us that it is far more than a formal or nominal party and that it is, for all practical purposes, in control of the project, be-

cause it regulates and approves nearly every act performed by private defendants. We must conclude that HUD is at least a partner in private defendants' acts, and that the state court suit which HUD now seeks to remove is substantially a proceeding against HUD affecting the construction of a low-income apartment complex. The mere fact that HUD has used private enterprise to effect its purposes may not blind us to the fact that the entire project, and the acts done in furtherance of it, are essentially the acts of HUD. For that reason we hold that the present action meets the requirements of 28 U.S.C. § 1442(a) (1) as a suit against a federal officer for an act done under color of office, and is thus removable. Plaintiffs' motion to remand is, therefore, denied.

Accordingly, an order will be entered this date.

---

20. United States v. West Willow Apartments, 245 F.Supp. 755 (E.D.Mich.1965).