**METROPOLITAN AREA HOUSING ALLIANCE, an unincorporated association, et al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., Defendants.**

**No. 75 C 3023.**

United States District Court.

N.D.Illinois, E.D. Jan. 29, 1976.

Kenneth K. Howell, Gordon G. Waldron, Legal Assistance Foundation, Chicago, Ill., for plaintiffs.

Samuel K. Skinner, U. S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM DECISION

MARSHALL, District Judge.

The Metropolitan Area Housing Alliance (MAHA) and five individual plaintiffs filed the instant class action for declaratory and injunctive relief against the Department of Housing and Urban Development (HUD), Carla Hills, Secretary of HUD, and John L. Waner, Director of the Chicago Area HUD office, seeking a declaration and concomitant injunctive order that HUD's "vacancy requirement," 24 C.F.R. § 203.381 (1975), as enforced and administered, violates various provisions of the National Housing Acts, the fifth amendment to the Constitution, the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.* (1970), and the National Environmental Policy Act, 42 U.S.C. § 4321, *et seq.* (1970). A preliminary injunction on behalf of the named individual plaintiffs was granted on October 28, 1975. No decision was made, however, on the plaintiffs' October 20, 1975, request that the action be certified as a class action under *Fed.R.Civ.P.* 23(b)(2). Pursuant to the mandate of Rule 23(c)(1), the parties were directed to file briefs on the question of class certification. *Peritz v. Liberty Loan Corp.*, 523 F.2d 349 (7th Cir. 1975). The issue is fully briefed and ready for decision.

The heart of the class certification is the definition of the class, both as to membership and geographic scope. To understand and resolve the dispute, a discussion of the litigation's background is necessary. The Harmons and Ms. Sholar are former mortgagors of homes

located in Chicago. Their mortgages were insured under Section 203 of the National Housing Act, 12 U.S.C. § 1709 (Supp.1975). They lost their homes when the mortgagees foreclosed after defaults on the mortgages.

Unlike the Harmons and Ms. Sholar, the Henneghens did not own their residence. They leased an apartment in a three-flat building located in Chicago, the mortgage on which was insured under Section 203. When the owner of the building defaulted on his mortgage payments, he agreed to deed the property to the mortgagee in lieu of foreclosure. This was agreeable to the mortgagee, providing that the building was vacant on the date of title transfer.

During the period of foreclosure the Harmons and Ms. Sholar [1] remained in possession of their homes. Similarly, the Henneghens are still living in their apartment although the mortgagee requested that they vacate the premises by September 1, 1975.

The mortgage companies are presently seeking to recover from HUD on the FHA insurance. Before the insurance is paid, however, HUD requires that the mortgagees certify that the insured property is vacant. That requirement is set out in 24 C.F.R. § 203.281:

> Unless otherwise approved by the Commissioner, the mortgagee shall certify that the property is vacant and does not contain any personal property as of the date of the filing for record of the deed to the Commissioner
>
> .  .  .  .

As indicated by the language of the regulation, HUD can waive the vacancy requirement. The circumstances and procedures under which a waiver will be granted are outlined in several HUD handbooks and a HUD memorandum dated May 28, 1975. In HUD Handbook 4191-1, *Administration of Insured Home Mortgages* ¶ 145(a)(2), at 59–60 (1974), the agency iterates the general rule that vacancy is required before a mortgagee can deed property to HUD. The paragraph then goes on to list in general terms the circumstances under which a former mortgagor will be allowed to remain in possession. Importantly, the waiver request is to be made by the mortgagee.

A second HUD Handbook, 4310.5, *Property Disposition Handbook One to Four Family Properties* ¶ 91(a), at 45 (1970), provides that the preferable course is to have the mortgagee convey the property vacant so that it can be programmed for repair and exposed to the market for sale. Continued tenant occupancy may be permitted, however, when necessary to prevent vandalism or when investment property is concerned, as a two to four family dwelling with tenants. But again, the request for a vacancy waiver must be made by the mortgagee, and the burden is on it to present the necessary evidence that will justify a waiver. Whether a waiver will be granted is left to the sound discretion of the local office director.

The most comprehensive set of guidelines for determining when to grant a waiver and the procedure for processing waiver requests are contained in a memorandum circulated to HUD field offices.[2] The prefatory portion of the memorandum states, "[t]his memorandum establishes the policy and procedures for accepting conveyance of properties occupied." As with the HUD handbooks, the memorandum stresses that in every instance the request for a

---

1. Subsequent to the filing of the motion for class certification, Ms. Sholar moved.

2. The memorandum is attached to group exhibit C in the defendants' "Memorandum in Opposition to the Plaintiffs' Motion for Preliminary Injunction." The defendants state that the explanatory memorandum was circulated by the Chicago Area Office of HUD. This statement appears incorrect upon an examination of the memorandum, which suggests it originated in Washington, D. C., and was sent to all HUD field offices.

waiver must be made in writing by the mortgagee. And should a mortgagor contact HUD directly for a waiver, the individual is to be told to contact his mortgagee who in turn is to file the request. The same procedures are apparently followed when a tenant is involved.[3] The mortgagee's request for a waiver is processed by a "Realty Specialist," who is directed to obtain any necessary additional information from the mortgagee. The mortgagor is to be contacted only "if necessary." If the request for waiver is approved, the mortgagee and mortgagor are notified. On the other hand, if the request is denied notification is sent only to the mortgagee. Similar procedures are followed when a mortgagor makes a request to repurchase property or a tenant requests the opportunity to purchase the mortgaged property.

One final document requires comment. The Chicago Area Office sent a letter to all approved mortgagees informing them of the policy and procedure for obtaining waivers. (HM Mortgagee Letter 75–2).[4] This letter merely summarizes the content of the previously discussed memorandum and nothing in the letter suggests that the Chicago Area Office policy and procedures deviate in any manner from those outlined in the memorandum.

In summary, the three documents originating from HUD in Washington establish that the procedure for obtaining a waiver of the vacancy requirement does not allow for any direct participation by the mortgagor or tenant. This lack of input was found to violate tenants' and mortgagors' due process rights

in the memorandum decision of October 28. More importantly, for purposes of the present motion, the procedures found defective are national in scope. Area Offices, as indicated by the letter originating from the Chicago Area Office, follow the procedures outlined by HUD in Washington.

■ One final matter remains to be considered before turning to the particular requirements of Rule 23(b)(2). The defendants contend that the court is without jurisdiction to hear this action because the plaintiffs do not assert that each member of the class, both named and unnamed, has sustained damages in excess of $10,000. 28 U.S.C. § 1331 (1970); see Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed. 2d 511 (1974). In the October 28 memorandum decision there was a jurisdictional reference to Section 1331 and the plaintiffs' generalized allegation that the amount in controversy exceeded $10,000,[5] as well as 5 U.S.C. § 701 et seq. (1970). At the time of that decision, however, no challenge to the court's jurisdiction had been raised by the defendants.

■ The plaintiffs' jurisdiction paragraph alleges jurisdiction under 28 U.S.C. §§ 1331, 1337, 5 U.S.C. § 701 et seq., and 12 U.S.C. § 1702. Jurisdiction is not present under Section 1702, which merely renders the defendants amenable to suit. Choy v. Farragut Gardens 1, Inc., 131 F.Supp. 609, 613 & n.5 (S.D. N.Y.1955); cf. Fox v. City of Chicago, 401 F.Supp. 515, 517 (N.D.Ill.1975). Section 1337 provides that district courts have original jurisdiction over civil actions or proceedings arising un-

---

3. In the case of two to four family dwellings occupied by tenants the memorandum suggests that the preferable course is to grant the waiver, providing rent payments are current. This, in effect, seems to reverse the previously observed preference by HUD to accept property in a vacant status.

4. Group exhibit C, supra, note 1.

5. The complaint does not state that the amount in controversy is in excess of $10,000 for each plaintiff, and it is settled that where claims are separate and distinct they may not be aggregated to satisfy the jurisdictional amount requirement. Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969).

der any act of Congress regulating commerce; no amount in controversy is required. A number of federal courts have concluded that claims arising under the National Housing Acts are cognizable under this section. *Winningham v. H.U.D.*, 512 F.2d 617, 621–22 (5th Cir. 1975); *Davis v. Romney*, 490 F.2d 1360 (3d Cir. 1974); *Mandona v. Lynn*, 357 F.Supp. 269 (D.C.Mo.1973). *Contra, Potero Hill Community Action Committee v. Housing Authority*, 410 F.2d 974 (9th Cir. 1969). This action arises under Sections 203 and 204 of the National Housing Act of 1934, 12 U.S.C.A. §§ 1709, 1710 (Supp.1975). The commerce clause has been held to be a significant source of federal power for the Act. *Davis v. Romney, supra,* at 1366–67; *see United States v. Emory*, 314 U.S. 423, 430, 62 S.Ct. 317, 86 L.Ed. 315 (1941). Therefore, jurisdiction over Count I of the complaint exists under 28 U.S.C. § 1337.[6] Similarly, Count II of the complaint, which arises under the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* (1970), is cognizable under Section 1337. *Citizens for Clean Air, Inc. v. Corps of Engineers*, 349 F.Supp. 696 (S.D.N.Y.1972).

■ An action brought on behalf of a class may be certified under Rule 23 if the plaintiffs satisfy the four requirements of Rule 23(a) and one of the three subsections of Rule 23(b). Rule 23(a) provides:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Before determining whether the plaintiffs have satisfied these prerequisites, however, the class must be defined.

The plaintiffs first proposed that the class be defined as "all present and potential occupants of. one-to-four-unit properties covered by FHA-insured mortgages, who are or will be subject to the dispossession because of the operation and enforcement of the vacancy requirement; 24 C.F.R. 203.381." Later they suggested what was described as a less cumbersome definition: "Occupants of one-to-four-unit residential properties covered by mortgages insured by the Federal Housing Administration." The defendants object to these definitions on two broad grounds. First, that under either definition the class includes individuals who do not presently have a dispute with HUD, or more specifically, they are not threatened with eviction. And second, that the class should be limited to the jurisdictional area of the Chicago Area Office. Consequently, they propose that the class be defined as "those occupants of one-to-four unit residential property insured under the National Housing Act and located within the insuring jurisdiction of the HUD Chicago Area Office where the mortgagor of the property is in default and the mortgagee is in the process of acquiring title."

■ The definitions proposed by both parties are inadequate. The class shall be defined as all present and future mortgagors or lessees of one to four unit residential properties covered by mortgages insured by the Federal Housing Authority who are or will be

---

6. Although § 10(a) of the Administrative Procedure Act, 5 U.S.C. § 702 (1970), is an independent grant of jurisdiction, there is no need to consider this section in view of the conclusion reached concerning Section 1337. *Eskra v. Morton*, 524 F.2d 9 (7th Cir. 1975); *Sanders v. Weinberger*, 522 F.2d 1167 (7th Cir. 1975).

subject to dispossession because of the operation of 24 C.F.R. § 203.381.[7]

■ The definition is similar to the one originally proposed by the plaintiffs and narrower than the second. It is also much broader than one suggested by the defendants. The principal objection to the plaintiffs' second definition is that it included individuals who were not and never would be subject to the vacancy requirement. It is broader than the defendants' suggested class in that it is national in scope and includes individuals who are not presently subject to dispossession. Moreover, it includes individuals such as the Henneghens who are subject to dispossession although the mortgagee may never acquire title.[8]

Obviously, the class definition is still subject to the objections the defendants originally pressed. Their first objection is that a class may only include individuals who presently are subject to eviction. This is incorrect. Subdivision (b)(2) of Rule 23, the section the plaintiffs proceed under,

> . . . is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. . . . Action or inaction is directed to the class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.

1966 Committee Note to Subdivision (b)(2). 3B J. Moore, *Federal Practice*

¶ 23.01 [10.–2], at 23–28 (2d ed. 1975). Consequently, many class actions under (b)(2) have been brought by representatives of a class which includes members who have not been the object of the challenged behavior. *See, e. g., Gilmore v. James,* 274 F.Supp. 75, 87 (N.D.Tex. 1967) (3 Judge Ct.), *affirmed,* 389 U.S. 572, 88 S.Ct. 695, 19 L.Ed.2d 783 (1968) (per curiam); *Eskra v. Morton,* 524 F.2d 9, 10 (7th Cir. 1975), *rev'g on other grounds,* 380 F.Supp. 205 (E.D.Wis. 1974); *Sullivan v. Houston Independent School District,* 307 F.Supp. 1328, 1337–38 (S.D.Tex.1969). See also, 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1775, at 19–21 (1972).

■ The defendants also strenuously object to the certification of a national class. Their principal objections are that there is no evidence that the practices complained of are in effect nationwide and that the action would be unmanageable as a national class. Nothing in the language of Rule 23(b)(2) prohibits certification of national classes, and several have been certified. *See e. g., Bermudez v. United States Department of Agriculture,* 160 U.S.App.D.C. 150, 490 F.2d 718, *cert. denied,* 414 U.S. 1104, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973); *Norton v. Weinberger,* 364 F. Supp. 1117 (D.Md.1973) (3 Judge Ct.), *vacated on other grounds,* 418 U.S. 902, 94 S.Ct. 3191, 41 L.Ed.2d 1150 (1974); *Murry v. Department of Agriculture,* 348 F.Supp. 242 (D.D.C.1972) (3 Judge Ct.), *aff'd,* 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973). If a plaintiff requests certification of a national class and the allegations of the complaint and the evidence submitted in support of certification allege a nationwide pattern of a course of conduct which is applica-

---

7. A court may modify the proposed definition of a class if it believes the definition is inadequate. *Metcalf v. Edelman,* 64 F.R.D. 407, 409 (N.D.Ill.1974).

8. Under appropriate circumstances title may be conveyed directly to HUD from the mort-

gagor without an intermediate conveyance to the mortgagee. 24 C.F.R. § 203.358 (1975). See also 24 C.F.R. § 203.357 (1975) which permits a mortgagee to accept a deed from the mortgagor in lieu of foreclosure.

ble to the class, a national class should be certified. *See generally, Fujishma v. Board of Education,* 460 F.2d 1355 (7th Cir. 1972).

██ By this standard, a national class is appropriate, providing that the requirements of Rule 23(a) are met. The vacancy requirement which is challenged as being irrational, unreasonable and inconsistent with the National Housing Acts is contained in 24 C.F.R. § 203.381 and interpreted in the HUD publications and is applicable throughout the United States. Similarly, the procedures for waiving the requirement, which are challenged on grounds of procedural due process, are applicable nationwide as demonstrated by the HUD documents reviewed earlier. The plaintiffs having made this prima facie showing of a nationwide policy and procedure, it was incumbent upon the defendants to come forward with evidence establishing that the challenged regulation and procedures were limited to the Chicago Area Office. This has not been done. In fact, the only evidence submitted on local procedures, the Chicago Area Office memorandum discussed earlier, revealed that the Chicago Office follows the procedure outlined for all HUD offices. Thus, the defendants' assertion that the plaintiffs have failed to establish a national pattern or course of conduct is baseless.

██ ██ The defendants' second objection, that a national class would be unmanageable, is equally unfounded. First, the manageability factors that the defendants rely on are, by the terms of Rule 23(b)(3), applicable only to (b)(3) class actions. In a (b)(2) action only the prerequisites of Rule 23(a) and the requirements of (b)(2) must be satisfied. Moreover, an action for declaratory and injunctive relief involving federal regulations, when no damages are requested, presents no inherent management difficulties. If the procedures are found wanting they are declared invalid, and their use is enjoined.[9] In terms of manageability, nothing could be simpler.

Before turning to the requirements of Rule 23(a), one additional reason should be mentioned for certifying a national class. This is not the first action challenging the vacancy requirement. As noted in the Memorandum Decision of October 28, HUD's procedures for granting waivers were found invalid by the Second Circuit in *Caramico v. Secretary of the Department of Housing and Urban Development,* 509 F.2d 694 (2d Cir. 1974). For reasons that are not disclosed in the district or circuit courts'[10] opinions, a class has not been certified. Therefore, although the challenged procedures were declared unconstitutional, the effect of the decision was limited to the named plaintiffs; the result being the present litigation.[11]

9. The defendants assert that the class would be unmanageable because any alleged breach of the injunction would have to be heard by the court. That is true of any class action, however. Furthermore, the court presumes that the defendants will abide by whatever orders are entered in this litigation.

10. *Caramico v. Romney,* 390 F.Supp. 210 (E.D.N.Y.1973); *Manners v. Secretary of Housing and Urban Development,* 333 F. Supp. 829 (E.D.N.Y.1971).

11. *Bermudez v. United States Dept. of Agric.,* 160 U.S.App.D.C. 150, 490 F.2d 718, *cert. denied,* 414 U.S. 1104, 94 S.Ct. 737, 38 L.Ed. 2d 559 (1973), is a further example of the waste of resources occasioned by the failure to proceed on the basis of a national class when one can permissibly be certified. The case involved a challenge to certain Agriculture Department policies that were national in application. The district court held the regulations unconstitutional and certified a national class, and the court of appeals affirmed, noting that two other district courts had reached the same conclusion on the legality of the policies, but had not certified national classes. One court felt a class was unnecessary because it believed the Government would voluntarily rescind the policies and because of the precedential effect of the decision, while the other limited the class to the court's district. Had either of these courts certified a national class, there would have been no need for the subsequent litigation.

Having concluded that there is a class, and that the appropriate contours are national, the question remains whether the plaintiffs have satisfied the prerequisites of Rule 23(a) and the requirements of subsection (b)(2). There is no question that the class is so numerous that joinder of all members is impracticable. In paragraph nine of the complaint the plaintiffs allege that there are approximately 5.5 million FHA mortgages in force in the United States, 135,000 of which are in Chicago. Of this latter number 2,800 mortgages are in the process of foreclosure, and an undetermined number are awaiting expiration of the redemption period. Therefore, based on these figures, Rule 23(a)(1) is satisfied, even though the precise number of class members cannot be ascertained. *See Eskra v. Morton*, 380 F.Supp. 205, 213 (W.D.Wis.) *rev'd on other grounds*, 524 F.2d 9 (7th Cir. 1975); *Jack v. American Linen Supply Co.*, 498 F.2d 122 (5th Cir. 1974).

The prerequisites of Rule 23(a)(2) and (a)(3) are also satisfied. The class allegations of the complaint involve questions of law and facts which are common to all the plaintiffs. And since the claims of the class members stem from a single regulation and set of interpretive documents to which they assert a common legal theory of invalidity, subdivision (a)(3) is satisfied. *See* 7 C. Wright & A. Miller, *supra*, § 1764, at 614 (1972).

The final prerequisite of Rule 23(a) is that the representative parties fairly and adequately protect the interests of the class. The named representatives are James and Clara Henneghen and Thomas and Leatrice Harmon.[12] The court is confident that the named plaintiffs are adequate representatives of the class, there being no indication that their interests are in anyway antagonistic to the interests of the unnamed class members. Moreover, the attorneys for the plaintiffs are competent and experienced in this type of litigation and are willing to conduct the lawsuit on behalf of the proposed class. *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562–64 (2d Cir. 1968); *Serritella v. Engleman*, 339 F.Supp. 738, 748 (D.N.J.1972).

The defendants have asserted repeatedly that MAHA cannot be a representative of the class because it is not a member of the class. Aside from the probable inaccuracy of this statement, MAHA does not claim that it can represent the class. *Norwalk CORE v. Norwalk Development Agency*, 395 F.2d 920, 937 (2d Cir. 1968); *Undergraduate Student Association v. Peltason*, 359 F.Supp. 320, 323 (N.D.Ill.1973).

In addition to satisfying the prerequisites of Rule 23(a), the plaintiffs must meet the requirement of one of the subsections of 23(b). They assert that the action is maintainable under subsection (b)(2), which provides:

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; . . .

In light of the conclusion reached in the discussion of subdivisions (a)(2) and (a)(3), and that the plaintiffs challenge a HUD regulation and its concomitant procedural method of implementation, the requirements of (b)(2) are met.

In conclusion, the plaintiffs have satisfied the prerequisites of Rule 23(a) and the requirements of 23(b)(2), and a class action on behalf of the class previously defined will be certified. One final caveat, however. This action is certified as a class action only on plaintiffs' claims that 28 C.F.R. § 203.381 is inconsistent with the mandate of the various Housing Acts, that the procedures utilized by HUD for waiving the

12. The plaintiffs have withdrawn Ms. Sholar as a class representative.

vacancy requirement violate due process, and that the regulation is inconsistent with the National Environmental Policy Act. The claims that HUD arbitrarily and capriciously refused to waive the vacancy requirement for individual plaintiffs may not proceed as a class, a position to which the named plaintiffs seem to ascribe. An order will enter certifying this action as a class action pursuant to Rule 23(b)(2).