HOME SAVINGS AND LOAN ASSOCIA-
TION OF JOLIET, a state savings and
loan association, First National Bank of
Joliet, a national banking association,
First Savings and Loan Association of
Will County, a state savings and loan
association, Union National Bank and
Trust Company, a national banking as-
sociation, Plainfield Savings and Loan
Association, a state savings and loan
association, Plainfield National Bank, a
national banking association, Plaintiffs,

v.

SAMUEL T. ISAAC & ASSOCIATES,
INC., a corporation; Samuel T. Isaac,
individually; Secretary of the Depart-
ment of Housing and Urban Develop-
ment; Salem Village III, Inc., a corpora-
tion; and Lutheran Social Services of
Illinois, a corporation; and Unknown
Owners, Defendants.

No. 79 C 3568.

United States District Court,
N. D. Illinois, E. D.

Sept. 8, 1980.

William J. Holloway, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for plaintiffs.

James White, Asst. U.S. Atty., Chicago, Ill., for Secretary of HUD.

Richard J. Aronson and Robert L. Canel, Chicago, Ill., for Samuel T. Isaac & Associates and Samuel T. Isaac, individually.

Robert A. Knuti, Lord Bissell & Brook, Chicago, Ill., for Lutheran Social Services of Illinois and Salem Village III.

## ORDER

BUA, District Judge.

The present action is one for equitable relief, the plaintiffs claiming essentially that they are entitled to reformation of certain Participation Agreements currently in effect between them and defendant Samuel T. Isaac & Associates, Inc. [Associates]. Said action was filed initially in the Circuit Court of Will County, Illinois, and was timely removed to this court, pursuant to 28 U.S.C. § 1442(a)(1), by the defendant Secretary of Housing and Urban Development [HUD or the Department].

The plaintiffs herein are six Illinois commercial banking concerns. In their action, they contend that they were induced to enter into the Participation Agreements at issue because of certain misrepresentations allegedly made by defendant Samuel T.

Isaac. Defendant Isaac is a mortgage broker who, while doing business as Samuel T. Isaac & Associates, Inc., arranged for the plaintiff banks to, through him, loan approximately $6,744,500 to defendant Lutheran Social Services of Illinois [LSSI or Lutheran] for construction of a retirement housing complex, known as Salem Village III, to be operated by Lutheran in Joliet, Illinois. This loan, which was formally made to Salem Village III and secured by a mortgage and note, was to be—and in fact ultimately was–FHA insured. Under an agreement reached pursuant to 12 U.S.C. § 1715z, portions of it also were to be repaid to the mortgagee directly by HUD.

The Participation Agreements under discussion, drawn in connection with the Salem Village III loan, reflect the extent and particulars regarding each of the plaintiffs' involvement in that transaction. Also included in each Agreement are the provisions: (a) that defendant Samuel T. Isaac & Associates, Inc. was to be named as mortgagee in the Salem Village III mortgage and note; and (b) that said mortgage and note, along with all other documents evidencing and securing the same, were to remain in the sole possession of Associates. It is these provisions the plaintiffs seek to have reformed.

Currently pending before the court are the following motions of the parties:

Defendant HUD's motion to dismiss or in the alternative for summary judgment. Rules 12(b)(6) and 56(b), Fed.R.Civ.P.

The plaintiffs' motion for a preliminary injunction and appointment of a Receiver. Rule 65(a), Fed.R.Civ.P.

The court, however, because it believes that removal of this cause was improvidently granted, and because subject matter jurisdiction to hear the matter otherwise is lacking, will not rule upon these motions. Rather, for the reasons stated below, the present action is ordered remanded to the Circuit Court of Will County, Illinois.

*Removal of the Cause was Improvidently Granted*

■ As was noted above, the case at bar was filed initially in the Circuit Court of Will County, Illinois, and was timely removed to this court by the defendant Secretary of Housing and Urban Development. Said removal was founded solely upon the provisions of 28 U.S.C. § 1442(a)(1), with no other basis for federal jurisdiction being shown.

28 U.S.C. § 1442(a)(1) provides in relevant part:

(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office . . .

Actions of this type encompassed by § 1442(a)(1) can be removed to a federal forum even if it is shown that federal jurisdiction otherwise is lacking. *Lindy v. Lynn*, 395 F.Supp. 769, 771 (E.D. Pa. 1974), *aff'd*, 515 F.2d 507 (3d Cir. 1975). If the state suit is one not properly removable under § 1442(a)(1), however, a federal defendant's presence in the matter is essentially immaterial. In situations of this nature, before the case can be heard in federal court, the general requirements for removal set forth in 28 U.S.C. § 1441 ordinarily will have to be satisfied. *See Mayberry v. Peninsula Psychiatric Hospitals, Inc.*, 470 F.Supp. 1268, 1269 (E.D. Tenn. 1979).

In their initial objections to HUD's petition for removal,[1] the plaintiffs in the present matter charged that no claim had ever even arguably been stated against the federal defendant. Rather, they contended, the Department was a purely nominal party to the action, and had been joined as a defendant only because such joinder was

---

1. The plaintiffs' response to HUD's Petition for Removal, although presented as objections to said Petition, was treated and dealt with by the court as a motion for remand. 28 U.S.C. § 1447(c); *see Howes v. Childers*, 426 F.Supp. 358, 359 (E.D. Ky. 1977).

required under Illinois law before the banks could properly be granted the equitable relief being sought. *See Vial v. Norwich ·Union Fire Insurance Co.*, 172 Ill.App. 134, 139–40 (1912), *aff'd*, 257 Ill. 355, 100 N.E. 929 (1913). Thus, the plaintiffs argued, since no claim had in actuality been made against the Secretary, or even against HUD itself, removal under 28 U.S.C. § 1442(a)(1) was improper.

HUD, in response, relying upon *Haggard v. Lancaster*, 320 F.Supp. 1252 (N.D. Miss. 1970) and certain dicta in *Willingham v. Morgan*, 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969) as authority, contended first that, under 28 U.S.C. § 1442(a)(1), in situations where cognizable federal interests could be significantly affected by the outcome of a pending state proceeding, removal of that action by a defendant federal agency is permissible. After next pointing to its heavy and detailed involvement in the Salem Village III project–primarily in its capacity as the FHA mortgage insurer, the Department then argued that because its overall interest in the present litigation was substantial, and could in part be directly affected by the relief being sought, § 1442(a)(1) removal of the matter was proper.

■ When this court ruled upon the plaintiffs' objections to removal, HUD's characterization of the present matter, to the extent that it related to how the banks' claims might affect or bear upon the Department's interests, was accepted as correct. Accordingly, because the construction given by HUD to § 1442(a)(1) also was found to have been reasonably accurate, removal of the action was allowed to stand. Later developments in the case, however, the most significant being HUD's motion to dismiss and the arguments made therein, lead the court to now believe that its earlier ruling on the removal question was erroneous.

From the time of its initial enactment, 28 U.S.C. § 1442(a)(1) was intended primarily to afford protection to federal officers and agencies from actions which threatened them with personal liability or civil penal-

ties. The provision was designed essentially to be a vehicle to enable federal defendants, who may have federal defenses to the claims or charges being made against them, to present their defenses in a federal forum. *Mayberry v. Peninsula Psychiatric Hospitals, Inc., supra,* at 1269; *Wilhelm v. United States Department of Air · Force*, 418 F.Supp. 162, 165 (S.D. Tex. 1976); *West v. West*, 402 F.Supp. 1189, 1190–91 (N.D. Ga. 1975); *State of New Jersey v. Moriarity*, 268 F.Supp. 546, 554–61 (D. N.J. 1967). In the case at bar, no claim presently is stated against HUD which would subject either the Secretary or the Department to the threat of personal liability or civil penalties. *See Wilhelm v. United States Department of Air Force, supra* at 165–66; *West v. West, supra* at 1191–92; *State of New Jersey v. Moriarity, supra* at 555–56. That such is true was made quite clear by HUD itself, in the Department's characterization of the plaintiffs' claims in its motion to dismiss. In the banks' complaint, no wrongdoing on the part of the Secretary or the Department is alleged, nor is recovery sought from either entity. Rather, the Department has been joined as a defendant only so that, if the plaintiffs ultimately prevail on the merits, and the Participation Agreements at issue are ordered reformed to direct that the banks be named as mortgagee on the Salem Village III mortgage and note (with said mortgage and note being reformed accordingly), HUD–in its capacity as a 12 U.S.C. § 1715z payor on the note–will be before the court and can be instructed to make future payments in accordance with the terms of the reformed Agreements. Such joinder, at least arguably, was required under Illinois law. *See Vial v. Norwich Union Fire Insurance Co., supra* at 172 Ill.App. 139–40.

From the face of their complaint, it thus appears that the banks have not stated any claim against HUD which could properly be considered removable under 28 U.S.C. § 1442(a)(1). *Mayberry v. Peninsula Psychiatric Hospitals, Inc., supra* at 1269; *Wilhelm v. United States Department of Air Force, supra* at 165–66; *West v. West, su-*

pra at 1192. To the contrary, from the pleadings it does not appear that any substantial controversy exists between the plaintiffs and this defendant. When approving removal earlier, however, this court relied heavily upon HUD's contention, as supported by its reference and citation to *Haggard v. Lancaster, supra,* that removal was proper because a realistic possibility existed that, if the present matter was resolved in favor of the plaintiffs, the Department's position as the FHA mortgage insurer of the Salem Village III loan would be adversely affected. Because such a situation existed, HUD had argued, removal under § 1442(a)(1) was mandated if the Department's interests as the FHA insurer were to be adequately protected.

In moving to have the matter dismissed, though, HUD now argues specifically that resolution of the plaintiffs' cause would not have any affect, either direct or indirect, on its present interests as the Salem Village III FHA insurer. Federal Defendant's Memorandum In Support Of Its Motion To Dismiss Or In The Alternative For Summary Judgment, at 2. A review of the pleadings and other materials submitted in connection with the Department's motion, moreover, strongly supports this latest contention of the federal defendant.

Neither the validity nor the viability of the Salem Village III mortgage has been questioned in the present action, and HUD's rights and liabilities thereto have not in any way been put in issue. Direct substantive relief, in addition, is not sought from the Department. When consideration is given to these facts, it appears clear that the Department's current position is the more correct one, and that its present interests as the FHA mortgage insurer will not be significantly affected by any findings made in this matter, nor by final resolution of it. *Mayberry v. Peninsula Psychiatric Hospitals, Inc., supra* at 1269. That being so, as for purposes of 28 U.S.C. § 1442(a)(1) no claim has been stated against the federal defendant, *Mayberry v. Peninsula Psychiatric Hospitals, Inc., supra* at 1269; *West v. West, supra* at 1192, the court now believes, and accordingly so holds, that removal of the plaintiffs' cause from the Circuit Court of Will County, Illinois was improvidently granted.

*Subject Matter Jurisdiction Does Not Otherwise Lie*

It having been found that removal of the plaintiffs' action was improvidently granted, pursuant to 28 U.S.C. § 1447(c) the proper course to now be followed ordinarily would be for this court to direct that the matter be remanded to the court from which it was removed, in this instance the Circuit Court of Will County, Illinois. *Bor-Son Building Corp. v. Heller,* 572 F.2d 174, 181 n.13 (8th Cir. 1978); *Wilhelm v. United States Department of Air Force, supra* at 166. Remand, however, cannot be directed so readily in the present matter. This is so because subsequent to HUD's removal of the cause, and the denial of the objections made thereto, the plaintiffs filed an amended complaint wherein it was alleged that independent bases for federal jurisdiction existed regarding certain of their claims.[2]

Although as a point of law such is not entirely clear, it appears that in situations of this nature, where a complaint has been amended after removal to–for the first time–set forth a basis for federal jurisdiction, the federal court hearing the matter, if said basis for federal jurisdiction is found to be valid, becomes vested with jurisdiction to proceed further, even if it is shown later that removal had been improvidently granted. *Brough v. United Steel Workers of America, AFL–CIO,* 437 F.2d 748, 749–50 (1st Cir. 1971). That being so, before remand can be ordered in the present matter, this court must first ascertain whether federal jurisdiction over the plaintiffs' cause, as amended, properly lies. As regards this question, however, the

2. The plaintiffs' Second Amended Complaint contains eight counts. Direct federal jurisdiction is alleged to lie with respect to Counts I, II, III, and VIII. In Counts IV, V, VI and VII only state and common law claims are presented. The claims stated in these counts, it is contended, are for jurisdictional purposes pendent to the plaintiffs' federal claims.

court, for the reasons stated below, finds such jurisdiction to be lacking.

In Counts I, III and VIII of their Second Amended Complaint, the plaintiffs seek relief from defendants Isaac and Associates for common law fraud [Count I], from Associates for breach of contract [Count III], and from defendants LSSI and Salem Village III for breach of contract [Count VIII]. Because the relief sought in each instance is specific reformation of the aforementioned Participation Agreements (with according reformation of the Salem Village III mortgage and note), however, HUD also is named as a nominal defendant in each count. Jurisdiction with respect to these claims is alleged to lie pursuant to 12 U.S.C. § 1702 and 28 U.S.C. § 1337.

Regarding Counts I, III, and VIII, the plaintiffs appear to be arguing in their complaint that, because much of the funding for the construction and operation of the Salem Village III project was either obtained or insured through HUD pursuant to the provisions of the National Housing Act, 12 U.S.C. § 1701, *et seq.*, and as the Department has been named as a defendant—albeit only a nominal one—with respect to these claims, their action, at least to this extent, is one "arising out of" the National Housing Act. That being so, they then conclude, because the National Housing Act was enacted pursuant to Congress' power to regulate commerce, *Davis v. Romney*, 490 F.2d 1360, 1365–66 (3d Cir. 1974), federal jurisdiction over Counts I, III and VIII is conferred under the provisions of 28 U.S.C. § 1337.[3]

■ With respect to this argument of the plaintiffs, the court notes first that, if the claims raised in Counts I, III and VIII were in fact ones grounded on the National Housing Act, their contention that federal jurisdiction lies under 28 U.S.C. § 1337 would be correct. *Metropolitan Area Housing Alliance v. United States Department of Housing and Urban Development*, 69 F.R.D. 633, 636–37 (N.D. Ill. 1976). Before an action can be viewed as having risen under a federal enactment, however, it must be clear from the face of the complaint that, as to the claim stated, the plaintiffs' right to a remedy is one either founded upon or the product of federal law. *Burgess v. Charlottesville Savings and Loan Association*, 477 F.2d 40, 43–44 (4th Cir. 1973). To establish such a right to relief under the National Housing Act, a plaintiff must allege either that the defendant violated a relevant provision of the Act, or that said provision was in some way unconstitutional. *Ames–Ennis, Inc. v. Midlothian Limited Partnership*, 469 F.Supp. 939, 944–45 (D. Md. 1979).

■ In Counts I, III and VIII of their complaint, no such allegations are made by the plaintiffs. No reference, in fact, is even made to the National Housing Act in these counts. Rather, relief is sought in said counts only for those common law wrongs allegedly committed by the named substantive defendants [Isaac and Associates in Count I; Associates in Count III; and LSSI and Salem Village III in Count VIII]. As that is so, since the plaintiffs have not shown that their right to relief is in any way founded or dependent upon the National Housing Act, their argument that federal jurisdiction over Counts I, III and VIII is conferred by 28 U.S.C. § 1337 must fail. *Ames–Ennis, Inc. v. Midlothian Limited Partnership, supra* at 944–45; *see Burgess v. Charlottesville Savings and Loan Association, supra* at 43–45.

---

**3.** 28 U.S.C. § 1337 provides:

The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

To the extent that the plaintiffs rely upon 12 U.S.C. § 1702 to sustain their contention that federal jurisdiction properly lies with respect to Counts I, III and VIII, such reliance is misplaced. 12 U.S.C. § 1702 does not confer sub-ject matter jurisdiction on the federal courts. Said provision, to the contrary, is simply a venue provision wherein the Secretary of Housing and Urban Development, in actions brought pursuant to the National Housing Act, is made amenable to suit in any appropriate federal district court. *Metropolitan Area Housing Alliance v. United States Department of Housing and Urban Development*, 69 F.R.D. 633, 636 (N.D. Ill. 1976).

In Count II of their Second Amended Complaint, the only other count in which direct federal jurisdiction is alleged to lie, *see* footnote 2, *supra*, the plaintiffs contend that defendants Isaac and Associates, when inducing them (the banks) to enter into the Participation Agreements at issue, engaged in manipulative and deceptive practices violative of both section 10(b) of the Securities Exchange Act of 1934 [the 1934 Act], 15 U.S.C. § 78j, and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5. That being so, they argue, as the amount in controversy clearly exceeds $10,000 federal jurisdiction is, at least as to Count II, conferred by 28 U.S.C. § 1331(a).

Before federal jurisdiction can properly lie with respect to this claim of the plaintiffs, though, it first must be established that the Participation Agreements at issue were securities, as that term is defined in the 1934 Act.[4] *C.N.S. Enterprises, Inc v. G. & G. Enterprises, Inc.*, 508 F.2d 1354, 1363 (7th Cir. 1975). As regards this question, the plaintiffs appear to be arguing that, because of the funds obtained through them in the Participation Agreement transactions were—pursuant to the express terms of said Agreements—lent to defendants Lutheran and Salem Village III with the understanding that the loan would be secured by a mortgage and note, they (the banks) were, at the time each entered into its respective Participation Agreement, in actuality purchasing proportional shares of the Salem Village III note.

█ Assuming this to be the most realistic description of the transactions at issue, however, the fact that it was shares of a "note" which were purchased by the plaintiff banks does not in and of itself mean that said transactions constituted sales of securities. To the contrary, it is well set-

tled that, as concerns the 1934 Act, not all notes are securities. *See e. g., Emisco Industries, Inc. v. Pro's Inc.*, 543 F.2d 38 (7th Cir. 1976); *C.N.S. Enterprises, Inc. v. G. & G. Enterprises, Inc., supra*; *McClure v. First National Bank*, 497 F.2d 490 (5th Cir. 1974); *Lino v. City Investing Co.*, 487 F.2d 689 (3d Cir. 1973); *Avenue State Bank v. Tourtelot*, 379 F.Supp. 250 (N.D. Ill. 1974). Because that is so, to better resolve such note–security problems, most courts, including those in this Circuit–have held that, as Congress in enacting the 1934 Act was concerned not with ordinary commercial notes, but rather with investment transactions, before a note can be deemed a security the circumstances underlying the subject transaction must be examined to determine whether it (the transaction) was one entered into essentially for investment purposes, or was primarily commercial in nature. *Emisco Industries, Inc. v. Pro's Inc., supra* at 39–40; *C.N.S. Enterprises, Inc. v. G. & G. Enterprises, Inc., supra* at 1357–63; *see Avenue State Bank v. Tourtelot, supra* at 254–56.

█ In the present matter, when such an investment–commercial analysis is applied, and the economic realities of the subject transactions examined, *Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967), it is clear that said transactions were almost entirely commercial in nature. With respect to the monies lent to LSSI and Salem Village III, the banks freely admit that, in so acting, they desired only to provide said defendants with a construction loan of approximately twenty–two months duration. Nothing further was intended. Also, in contrast to what might ordinarily be expected in an investment–oriented transaction, repayment to the banks on the subject loan was not in any way tied to the success or profitability

---

4. Section 2(1) of the Securities Act of 1933, 15 U.S.C. § 77b(1), provides that:

> When used in this subchapter, unless the context otherwise requires—
> (1) The term "security" means any note
> . . . .

The definition of "security" under section 3(a)(10) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10), is similar in language to

that in the 1933 Act. The definitions of security under both Acts, moreover, are generally viewed as being functionally equivalent. *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 556 n.7, 99 S.Ct. 790, 795, 58 L.Ed.2d 808 (1979); *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 847 n.12, 95 S.Ct. 2051, 2058, 44 L.Ed.2d 621 (1975).

of the Salem Village III venture.[5] Rather, under the terms of the Salem Village III note, both principal and interest were to be repaid in predetermined amounts on a fixed schedule.

Also of significance is the fact that, as regards the transactions at issue, the risks incurred by the plaintiff banks appear to be–at worst–no greater than those ordinarily assumed by commercial lenders in similar situations. As was noted above, under the terms of the subject note repayment of both principal and interest was to be made in accordance with a fixed schedule. The Salem Village III note, moreover, in addition to being fully secured, was FHA insured. In view of these facts, the court does not believe that the risks undertaken by the banks in the transactions under discussion could reasonably be considered ones related primarily to investment. *See Lincoln National Bank v. Herber*, 604 F.2d 1038, 1043 (7th Cir. 1979); *Great Western Bank & Trust v. Kotz*, 532 F.2d 1252, 1259–60 (9th Cir. 1976).

From the above, it thus is clear that the plaintiffs' involvement in the Salem Village III project was essentially commercial in nature. That being so, even if the banks' characterization of the Participation Agreement transactions is correct, from the facts presented all that can reasonably be said is that, when they entered into their respective Participation Agreements their actions constituted the purchase, in a commercial transaction, of shares of a commercial note acquired by all concerned for commercial purposes.[6]

Accordingly, as it has not been shown in Count III that the claim stated therein was

one encompassed within the provisions of the 1934 Act,[7] federal jurisdiction to hear the cause cannot lie. *C.N.S. Enterprises, Inc. G. & G. Enterprises, Inc., supra* at 1363. In that no statutory or Rule 10b–5 violation has been established, such jurisdiction cannot properly be founded upon 28 U.S.C. § 1331(a).

## CONCLUSION

The court having found that removal of the matter was improvidently granted, and that federal jurisdiction to hear the cause otherwise is lacking, pursuant to 28 U.S.C. § 1447(c) the plaintiffs' action is ordered remanded to the Circuit Court of Will County, Illinois.

IT IS SO ORDERED.

---

5. In addressing this particular point, the Seventh Circuit has stated:

> The touchstone [of a security] is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others.

*Emisco Industries, Inc. v. Pro's Inc.*, 543 F.2d 38, 40 (7th Cir. 1976), *quoting United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975).

6. In this context, the Participation Agreements were a memorialization of each bank's commit-

ment to contribute that portion specified of the overall commercial loan to be made to Salem Village III.

7. In reaching this conclusion, the court took into account all of the materials currently before it, including the testimony presented at the hearing held in connection with the plaintiffs' motion for a preliminary injunction and appointment of a Receiver, and the banks' Memorandum of Fact submitted in conjunction therewith.